542 S.E.2d 74

**STATE of West Virginia, Plaintiff below, Appellee,**

v.

**Chad COLEMAN, Defendant below, Appellant.**

No. 27807.

Supreme Court of Appeals of West Virginia.

Submitted Nov. 1, 2000.

Decided Dec. 1, 2000.

Darrell V. McGraw, Jr., Attorney General, Barbara H. Allen, Managing Deputy Attorney General, Charleston, for Appellee.

Heather A. Wood, Public Defender Corporation, Wheeling, for Appellant.

PER CURIAM:

## I.

The instant case is an appeal by Chad Coleman of his conviction for third-offense driving while intoxicated, a violation of *W.Va. Code,* 17C–5–2(k) [1996].

The charge against the appellant arose from events that unfortunately are far from unique. The appellant drove his car down an off ramp, crossed the center line, and ran into a car being driven by a woman who was seriously injured in the crash.

There were no skid marks showing any braking or evasive acts by the appellant. The appellant was found by emergency personnel to be incoherent and smelling strongly of alcohol. Taken to the hospital, the appellant was combative and diagnosed as having alcohol intoxication. Hospital authorities performed tests on the appellant's blood that showed an elevated blood alcohol level, and the results of these tests were admitted into evidence at the appellant's trial.

Police records showed that the appellant had been convicted of DUI four times previously. (The trial judge in sentencing the appellant strongly criticized authorities in the State of Ohio where these prior convictions occurred, for their slap-on-the-wrist approach to multiple-DUI offenders.)

## II.

The appellant asserts that there were a number of errors in his trial. We address two of the asserted errors, finding the others to be without merit.

First, Mr. Coleman argues that the jury was erroneously instructed that evidence that there was ten hundredths of 1% or more, by weight, of alcohol in Mr. Coleman's blood would be *prima facie* evidence that Mr. Coleman was "under the influence" of alcohol, or intoxicated.

Such an instruction is directly based on the provisions of *W.Va.Code,* 17C–5–8 [1994],[1]

---

1. § 17C–5–8. Interpretation and use of chemical test.

Upon trial for the offense of driving a motor vehicle in this state while under the influence

which gives *prima facie* "under the influence" or "intoxication" weight to such blood test results—*if* the blood test in question is "performed in accordance with methods and standards approved by the state division of health." *Id.*

Mr. Coleman bases his argument of instructional error on the fact that there was no evidence that the blood test results that were testified to at his trial did in fact meet the state-approved methods and standards, as specified in *W.Va.Code*, 17C–5–8 [1996]. The State concedes that there was no such evidence presented at Mr. Coleman's trial.

■ Second, Mr. Coleman argues that his "recidivist" third-offense DUI conviction should be reversed pursuant to the holding of *State v. Nichols*, 208 W.Va. 432, 541 S.E.2d 310 (1999). In *Nichols*, we held that telling a jury about a person's previous DUI offenses could be unfairly prejudicial at the trial of a recidivist DUI case, and we authorized alternative procedures, such as bifurcation and stipulation, to avoid such prejudice.

We can quickly dispose of the appellant's second issue. The appellant's case was tried on November 9, 1999, on a day when the decision in *State v. Nichols* was pending in the breast of this Court. The opinion in *Nichols* was filed on December 3, 1999—24 days after the appellant's trial date. The appellant did not make any claim for bifurcation or stipulation at his trial, nor did he take any other action to preserve any alleged error in this regard. Under these facts, we find no grounds under *Nichols* to reverse the appellant's conviction.

The appellant's first issue, regarding the *prima facie* intoxication instruction, is more substantial.

The State agrees that a literal reading of *W.Va.Code*, 17C–5–8 [1996] does not allow the results of blood tests (including those that are performed by non-law enforcement personnel) to have *prima facie* weight unless the tests are conducted in the statutorily-prescribed fashion.

The State argues nevertheless that this Court should not read the requirements of *W.Va.Code*, 17C–5–8 [1996] literally—because, contends the State, a literal reading of the statute would be "irrational."

For constitutional and similar weighty reasons, this Court must on occasion not uphold the clearly expressed statutory intent of the

of alcohol, controlled substances or drugs, or upon the trial of any civil or criminal action arising out of acts alleged to have been committed by any person driving a motor vehicle while under the influence of alcohol, controlled substances or drugs, evidence of the amount of alcohol in the person's blood at the time of the arrest or of the acts alleged, as shown by a chemical analysis of his or her blood, breath or urine, is admissible, if the sample or specimen was taken within two hours from and after the time of arrest or of the acts alleged, and shall give rise to the following presumptions or have the following effect:

(a) Evidence that there was, at that time, five hundredths of one percent or less, by weight, of alcohol in his or her blood, shall be prima facie evidence that the person was not under the influence of alcohol;

(b) Evidence that there was, at that time, more than five hundredths of one percent and less than ten hundredths of one percent, by weight, of alcohol in the person's blood shall be relevant evidence, but it is not to be given prima facie effect in indicating whether the person was under the influence of alcohol;

(c) *Evidence that there was, at that time, ten hundredths of one percent or more, by weight, of alcohol in his or her blood, shall be admitted as*

*prima facie evidence that the person was under the influence of alcohol.*

A determination of the percent, by weight, of alcohol in the blood shall be based upon a formula of (1) the number of grams of alcohol per one hundred cubic centimeters of blood, (2) the number of grams of alcohol per two hundred ten liters of breath, or (3) the number of grams of alcohol per sixty-seven milliliters of urine.

*A chemical analysis of a person's blood, breath or urine, in order to give rise to the presumptions or to have the effect provided for in subdivisions (a), (b) and (c) of this section, must be performed in accordance with methods and standards approved by the state division of health.* A chemical analysis of blood or urine to determine the alcoholic content of blood shall be conducted by a qualified laboratory or by the state police scientific laboratory of the criminal identification bureau of the division of public safety.

The provisions of this article shall not limit the introduction in any administrative or judicial proceeding of any other competent evidence bearing on the question of whether the person was under the influence of alcohol, controlled substances or drugs. (Emphasis added.)

Legislature. But this is not such a case. The requirements of *W.Va.Code*, 17C–5–8 [1996], read literally, may or may not be unwise—but they are not so absurd, inherently contradictory, or irrational as to require this Court to ignore or deviate from the clear language of the statute. It is certainly "rational" to require that certain procedures must be required before a chemical test may be afforded *prima facie* legal weight.

■ We must therefore agree with the appellant's contention that the judge's instruction to the jury on the *prima facie* weight of the blood test results evidence did not properly belong in the trial court's charge—because the blood test results in question did not meet the statutory criteria for being given such weight.

■ The question that follows from this conclusion is: does the court's inclusion of this instructional language in the jury charge require reversal of the appellant's conviction? In this regard, we must ask whether this error, as asserted on appeal, was fully and properly preserved for appellate review.

Counsel for Mr. Coleman does not direct us to any place in the record where an objection was made to the trial judge about inclusion of the *prima facie* instructional language in the jury charge, prior to the charge being given—although such an objection was made post-verdict, in a motion for a new trial.

During the trial, when the appellant's counsel objected to the prosecution's introduction of hospital blood test results as evidence, the trial judge (as part of a colloquy with counsel) asked the prosecutor if the prosecutor was going to offer the *prima facie* instruction as part of the jury charge. The prosecutor replied that he was, and that he expected that such a proffered instruction would draw an objection. Defense counsel did not speak to the *prima facie* instruction question, and the judge did not say that he was or was not going to give such an instruction.

The trial judge then admitted the hospital blood test results, but he specifically stated that the results were being admitted under *State ex rel. Allen v. Bedell*, 193 W.Va. 32, 454 S.E.2d 77 (1995).

■ In *Bedell*, this Court allowed the results of blood tests that were not administered by or at the direction of law enforcement to be introduced into evidence, stating:

> Medical records containing the results of blood alcohol tests ordered by medical personnel for diagnostic purposes are subject to subpoena and shall not be deemed inadmissible by virtue of the provisions of West Virginia Code § 57–5–4d (Supp.1994).

Syllabus Point 2, *State ex rel. Allen v. Bedell*, 193 W.Va. 32, 454 S.E.2d 77 (1995). We did not address in *Bedell* the issue of whether such test results could be given *prima facie* weight if there was no evidence that the tests were performed according to state-approved standards.

In the instant case, the trial judge correctly admitted the hospital blood test results evidence, not as necessarily having *prima facie* weight, but simply as blood alcohol level evidence, under *Bedell*.

At this juncture in Mr. Coleman's trial, then, we do not perceive that any objection was made by defense counsel to the propriety of including the *prima facie* instructional language in the jury charge.

Later in the trial, just before the judge charged the jury, the prosecutor said to the judge: "We accept the changes [in the charge] ... with the presumptions ...." It may be that by the word "presumptions," the prosecutor was referring to the *prima facie* instructional language. Defense counsel then indicated that he had "no objection" to the charge. Again, we do not perceive that there was an objection at this juncture in the trial to the court's inclusion of the *prima facie* language in the charge.

Upon our review of the trial record, then, we cannot conclude that there was a specific and timely objection presented to the trial judge by the appellant to the inclusion of the *prima facie* instructional language in the jury charge, prior to the giving of the charge. The asserted instructional error of which the appellant complains was not called to the attention of the judge until *after* the defendant was convicted—and there is no suggestion that the judge was unable or unwilling to entertain objections to the instructions and charge, prior to its being delivered to the jury.

Under these circumstances, we must regard this asserted error that the appellant complains of—the inclusion of the *prima facie* language in the jury charge—as unpreserved.

We review the asserted error, therefore, under the "plain error" doctrine. Syllabus Point 7 of *State v. LaRock*, 196 W.Va. 294, 470 S.E.2d 613 (1996) states:

> An unpreserved error is deemed plain and affects substantial rights only if the reviewing court finds the lower court skewed the fundamental fairness or basic integrity of the proceedings in some major respect. In clear terms, the plain error rule should be exercised only to avoid a miscarriage of justice. The discretionary authority of this Court invoked by lesser errors should be exercised sparingly and should be reserved for the correction of those few errors that seriously affect the fairness, integrity, or public reputation of the judicial proceedings.

Applying the foregoing principles, in view of the strong evidence (in addition to the blood test results) of the appellant's intoxication, and upon on our review of the entire record of the trial—which was conducted in a calm and even-handed fashion, despite the inflammatory subject matter—we do not believe that the giving of the *prima facie* intoxication instructional language in this case "seriously affect[ed] the fairness, integrity, or public reputation of the judicial proceedings" in question. *Id.* We certainly cannot say that Mr. Coleman's third-offense DUI conviction (actually his fifth DUI conviction) was a miscarriage of justice.

We therefore decline to exercise our discretionary authority to find plain error in the court's inclusion of the *prima facie* intoxication language in the jury charge.

### III.

For the foregoing reasons, the judgment below is affirmed.

Affirmed.