547 S.E.2d 241

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**David Shaun DAVISSON, Defendant Below, Appellant.**

**No. 28403.**

Supreme Court of Appeals of West Virginia.

Submitted March 6, 2001.

Decided April 6, 2001.

Darrell V. McGraw, Jr., Attorney General, Jacquelyn I. Custer, Senior Assistant Attorney General, Charleston, for Appellee.

Jerald E. Jones, West & Jones, Clarksburg, for Appellant.

PER CURIAM:

This is an appeal by David Shaun Davisson (hereinafter "Appellant") from an order of the Circuit Court of Harrison County affirming the Appellant's magistrate court conviction of second offense driving under the influence (hereinafter "DUI"). The Appellant challenges the validity of his warrantless arrest and the submission of evidence of his prior DUI conviction to the jury. Upon review of the briefs, record, and arguments of counsel, we affirm the decision of the lower court.

## I. Facts and Procedural History

On June 23, 1998, a single-vehicle accident occurred on New Creek Road in Harrison County, West Virginia. Mr. Steven Harlow, II, one of the Appellant's neighbors, was walking toward the entrance of his home with his family and a friend, Mr. Jim Ice, when the crash occurred. Mr. Harlow observed the vehicle leave the road and become lodged against a tree located on or near the property line in Mr. Harlow's front yard.

Several people in the vicinity called the police regarding the accident, and shortly before 10:00 p.m., Deputy Sheriff Jeffrey M. Cottrill of the Harrison County Sheriff's Office responded to the call to investigate the accident. Upon arriving at the scene, Deputy Cottrill observed that the vehicle was lodged against a tree and that the driver was not present. Deputy Cottrill interviewed Mr. Harlow and Mr. Ice and obtained written statements regarding their observations of the vehicle coming around a turn and leaving the road. The information Deputy Cottrill obtained from the witnesses included observations that the Appellant was the only individual to exit the vehicle; the Appellant's speech was slurred; the odor of alcohol was present on the Appellant; there were beer containers in the Appellant's truck; and the Appellant appeared to be having difficulty walking. Deputy Cottrill also discovered that the truck was registered to the Appellant.

Deputy Cottrill thereafter proceeded to the Appellant's residence. The Appellant approached Deputy Cottrill in the driveway, asking what the problem was. Deputy Cottrill explained that he was investigating an accident and that eyewitnesses had reported that the Appellant had left the scene after driving his truck off the road. The Appellant denied that he had been driving the truck, asserting that his wife had been driving at the time of the accident. According to the Appellant, he had been home the whole evening. Upon detecting the odor of alcohol and noticing that the Appellant's speech was slurred and that he would "sway somewhat," Deputy Cottrill administered the field sobriety tests [1] to the Appellant. The Appellant

---

1. The Appellant took the walk and turn test, the one-leg stand test, and the horizontal gaze nys- tagmus test.

failed the sobriety tests, and Deputy Cottrill thereafter arrested the Appellant for DUI.

On June 24, 1998, the Appellant was charged with second offense DUI, a violation of West Virginia Code § 17C–5–2 (1996) (Repl.Vol.2000). The Appellant had been convicted of DUI in November 1994. During a February 11, 1999, magistrate court trial, Mr. Harlow testified regarding his observations at the scene of the accident, as related to Deputy Cottrill during the initial investigation and referenced above. Mr. Harlow testified that he observed the "truck coming around the road, there's a turn there, and he just came straight at my house and there's a tree about 20 feet from my house. He didn't put on the brakes.... [T]here were no skid marks."

Mr. Harlow further explained that he and Mr. Ice ran immediately to the truck and observed the Appellant exiting the driver's side door.[2] Neither Mr. Harlow nor Mr. Ice observed anyone else in the vicinity of the truck. When Mr. Harlow and Mr. Ice approached the Appellant, he was belligerent, "yelling and screaming." According to Mr. Harlow and Mr. Ice, the Appellant informed Mr. Harlow and Mr. Ice that he was going to walk home to get his wife's Jeep to attempt to pull the truck out of Mr. Harlow's yard. The Appellant then walked away from the scene of the accident despite Mr. Harlow's admonitions that he should remain with the vehicle until the police arrived.

Mr. Harlow testified that he later observed the Appellant's wife approaching from the direction of the Appellant's home. Mr. Harlow observed the Appellant's wife remove an unidentified object from the truck, lock the truck, and depart. Mr. Harlow testified that the Appellant also returned to the accident scene with another neighbor and considered moving the wrecked vehicle with the neighbor's truck. Mr. Harlow informed them that they were not to remove the truck from his yard.

Mr. Harlow further testified that during his interaction with the Appellant, he observed "a couple cans of beer" on the floor of

the Appellant's truck, smelled alcohol in the truck and on the Appellant, and smelled alcohol on the Appellant's breath. Mr. Harlow stated: "When he was walking back to his house to get his wife's vehicle, he wasn't walking straight." Mr. Harlow also noticed that the Appellant's speech was slurred. Mr. Ice testified that he noticed containers of beer in the truck, as well as an "enormous aroma of beer [coming] [f]rom the truck and his breath." Mr. Ice observed that the Appellant was "really off balance," was staggering and had slurred speech.

During the magistrate court trial, the Appellant denied that he was the driver of the vehicle. He and his wife testified that she had been the driver of the vehicle and that she walked home following the wreck. The Appellant claimed that he sat on the neighbor's porch drinking beer while his wife dealt with the tow truck. No attempt was made to explain how Mrs. Davisson could have exited the vehicle without being observed by the neighbors present at the scene. On cross-examination, the Appellant could not explain why his testimony in court diverged from the statements he had made to Deputy Cottrill immediately following the accident, in which he alleged that he had been at home the entire evening.

The Appellant's 1994 DUI conviction was admitted into evidence after counsel for the Appellant agreed that the magistrate court records regarding that conviction were admissible. When the State initially moved the admission of the documents pertaining to the Appellant's prior conviction, defense counsel objected that the documents contained "extraneous material... that should not be admitted into evidence...." A sidebar, the contents of which were not reported, thereafter ensued. The record reflects that the next recorded exchange occurred as follows:

> Ms. Bailey (the State): Your Honor, at this time I would move this Exhibit into evidence in this case.
>
> The Court: Any objection?

---

2. According to the testimony, the passenger door was jammed against the tree, and passage through that door would have been impossible.

Mr. Jones (defense counsel): I think it's admissible under the documents—

The Court: There being no objection, it will be admitted.

At the conclusion of the evidence, the jury returned a verdict of guilty of second offense DUI. On March 8, 1999, the Appellant was sentenced to eight months in jail. On March 12, 1999, the Appellant appealed to the lower court, raising the following two grounds for appeal: (1) the warrantless arrest was unlawful and (2) the magistrate erred by permitting the State to twice amend the criminal complaint on the day of trial.[3] The Appellant did not raise any objection regarding the admission of documents relating to his prior DUI conviction either at trial in magistrate court or in his appeal to the lower court. He has raised that for the first time on appeal to this Court.

By order dated November 17, 1999, the lower court rejected the Appellant's appeal from the magistrate court, reasoning as follows:

It is undisputed in this case that the deputy did not enter the petitioner's house, but was met by the petitioner in the driveway. During the conversation in the driveway, the deputy noticed that the petitioner's breath smelled of alcohol, his speech was slurred and his walk was unsteady. The deputy had the petitioner perform field sobriety tests on the deck of the home.

No evidence exists that the deputy went into the petitioner's home; therefore, the protection against a warrantless arrest in the home does not apply to this case.

The Appellant now appeals that determination to this Court, contending that the arrest was improper and that the evidence of a prior DUI conviction should not have been presented to the jury.

## II. Standard of Review

■■■■ "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. Pt.

1, *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). The propriety of the arrest and the introduction of evidence of a prior DUI conviction are questions of law, reviewed by this Court under the *de novo* standard of review.

## III. Discussion

### A. Legality of the Appellant's Arrest

■■■■ The Appellant contends that the lower court should have reversed the magistrate court conviction based upon the Appellant's warrantless arrest. The Appellant, citing *State v. Cheek*, 199 W.Va. 21, 483 S.E.2d 21 (1996), contends that the State should have been required to prove exigent circumstances, as well as probable cause, in order to justify the arrest in the Appellant's driveway. In *Cheek*, police officers suspected that the defendant had been driving under the influence, went to his home, detected the odor of alcohol, and executed a warrantless arrest after pulling him from his house into the front yard. This Court found that the arrest was illegal, explaining:

Although the State maintains that the metabolism of alcohol created an exigent circumstance, the officers did not have reasonable grounds based on their investigation before the arrest to use the metabolism of alcohol as an exigent circumstance. Because Mr. Cheek was in his home, he was not liable to flee, destroy evidence or endanger the safety or property of others; especially with the two officers outside. Finally, we note that although the responding officers were on foot patrol, by the time Mr. Cheek was arrested, a third officer in a cruiser was present. Given the communications which must have occurred to bring the additional officer to the scene, the responding officers could have obtained an arrest warrant and probably would have if probable cause existed at that time to arrest Mr. Cheek for driving under the influence.

199 W.Va. at 26–27, 483 S.E.2d at 26–27.

The Appellant contends that his circumstances were similar to those encountered in

---

**3.** The Appellant apparently abandoned the amendment issue since it was not briefed on appeal to the lower court and was not raised on appeal to this Court.

*Cheek.* The State maintains, however, that *Cheek* is factually distinguishable because the officer in the present case did not enter the Appellant's home;[4] rather, the Appellant presented himself to the officer in the driveway and submitted to the field sobriety testing. The State consequently asserts that no exigent circumstances were necessary where the officer did not enter the Appellant's home and had probable cause to arrest the Appellant. The State therefore maintains that no Fourth Amendment rights were violated and asks this Court to affirm the Appellant's conviction.

 This Court dealt with a warrantless misdemeanor arrest in *Simon v. West Virginia Department of Motor Vehicles,* 181 W.Va. 267, 382 S.E.2d 320 (1989), and held as follows in the syllabus: "Probable cause to make a misdemeanor arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officer are sufficient to warrant a prudent man in believing that a misdemeanor is being committed in his presence." With particular reference to the offense of drunk driving, this Court acknowledged in *Carte v. Cline,* 200 W.Va. 162, 488 S.E.2d 437 (1997) that " 'an officer having reasonable grounds to believe that a person has been driving while drunk may make a warrantless arrest for that offense even though the offense is not committed in his presence.' " *Id.* at 167, 488 S.E.2d at 442 (quoting *Bennett v. Coffman,* 178 W.Va. 500, 361 S.E.2d 465, 467 (1987)). Syllabus point three of *Carte* instructs: "W.Va. Code § 17C–5A–1a (a) (1994) does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person."

 As this Court explained in syllabus point two of *State v. Mullins,* 177 W.Va. 531, 355 S.E.2d 24 (1987), both probable cause and exigent circumstances are required where the arrest occurs in the home: "A warrantless arrest in the home must be justified not only by probable cause, but by exigent circumstances which make an immediate arrest imperative."[5]

 The officer in the present case received information from witnesses to the accident regarding the Appellant's status as the driver of the wrecked automobile and his possible intoxication. The Appellant presented himself to the officer in the Appellant's driveway, rather than in his home or any enclosed area related to the home,[6] and the officer made observations justifying the administration of field sobriety tests. The officer thus had probable cause to arrest the Appellant based upon those witness statements, personal observations, and test results. There is no evidence that the officer entered the Appellant's home. Under the circumstances existing in this case, we do not find that exigent circumstances were necessary to justify the arrest. We consequently detect no error in the lower court's conclusion that the arrest was conducted in an appropriate manner.

**4.** The Appellant and Deputy Cottrill remained outside during all discussions, the administration of the tests, and the arrest.

**5.** United States Supreme Court decisions on the scope of Fourth Amendment protections indicate that it is the presence in the home which prompts the additional requirement of exigent circumstances. *See Payton v. New York,* 445 U.S. 573, 576, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980) (holding that "the Fourth Amendment ... prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest"); *United States v. Santana,* 427 U.S. 38, 42, 96 S.Ct. 2406, 49 L.Ed.2d 300 (1976) (finding that while stand-

ing in the doorway of her house, the defendant was in a public place for purposes of the Fourth Amendment, since "[s]he was not in an area where she had any expectation of privacy").

**6.** The facts of this case, in which the Appellant presented himself to the investigating officer in the driveway, do not offer this Court the opportunity to analyze the circumstances under which we might sanction or prohibit a warrantless arrest for a misdemeanor in an individual's home or any enclosed area related to an individual's home, under constitutional protections against unreasonable searches and seizures found in article III, section 6 of the West Virginia Constitution.

## B. Admission of Previous DUI Conviction

██ The Appellant also contends that the magistrate court erred by admitting evidence of the Appellant's prior DUI conviction. Although the Appellant consented to the introduction of the evidence of the prior conviction and did not raise this assignment of error at any level below this court, the Appellant now asserts that he is entitled to retroactive application of this Court's decision in *State v. Nichols,* 208 W.Va. 432, 541 S.E.2d 310 (1999), filed December 3, 1999. Prior to this Court's decision in *Nichols,* evidence of a defendant's previous conviction was considered a necessary element of second offense DUI. In *State v. Cozart,* 177 W.Va. 400, 352 S.E.2d 152 (1986), this Court announced the precept, applicable at the time of the Appellant's trial: "[W]here a prior conviction is a necessary element of the current offense charged or is utilized to enhance the penalty after a jury finding that the defendant has committed such prior offense, it is admissible for jury purposes. . . ." *Id.* at 402, 352 S.E.2d at 154 n. 1. In *State v. Hopkins,* 192 W.Va. 483, 453 S.E.2d 317 (1994), this Court reiterated that approach, explaining that "[b]ecause evidence of the prior convictions is a necessary element of the crime charged, the evidence is admissible for jury purposes." *Id.* at 489, 453 S.E.2d at 323.

 In *Nichols,* this Court encountered a situation in which a defendant had requested the lower court to accept a stipulation of the prior DUI convictions and conceal the evidence of those convictions from jury consideration. The circuit court, relying upon *Hopkins,* required the State to present evidence regarding the two prior convictions. The Court in *Nichols* was asked to "revisit the issue of whether it is mandatory that evidence of prior convictions be submitted to the jury in the prosecution of a subsequent DUI offense." *Id.* at 441, 541 S.E.2d at 319. This Court noted the absence of any "judicial reasoning or discussion supporting the assertions . . . that prior convictions must be submitted to the jury." *Id.* at 442, 541 S.E.2d at 320. The Court overruled *Hopkins* and its progeny and held as follows in syllabus point three:

When a prior conviction constitute(s) a status element of an offense, a defendant may offer to stipulate to such prior conviction(s). If a defendant makes an offer to stipulate to a prior conviction(s) that is a status element of an offense, the trial court must permit such stipulation and preclude the state from presenting any evidence to the jury regarding the stipulated prior conviction(s). When such a stipulation is made, the record must reflect a colloquy between the trial court, the defendant, defense counsel and the state indicating precisely the stipulation and illustrating that the stipulation was made voluntarily and knowingly by the defendant. To the extent that *State v. Hopkins,* 192 W.Va. 483, 453 S.E.2d 317 (1994) and its progeny are in conflict with this procedure they are expressly overruled.

The State maintains that the Appellant is barred from belatedly invoking the protections of the *Nichols* decision since (1) he failed to preserve that issue at magistrate court trial or raise it at the circuit court level, (2) *Nichols* expressly states that the opinion is not to be applied retroactively, and (3) *Nichols* would not provide the Appellant's requested relief even if it were applied retroactively to this case.

Upon review of this matter, we find that the Appellant is not entitled to retroactive application of *Nichols.* Recognizing the potential for attempts to employ the *Nichols* principles retroactively, we specified in *Nichols* that the opinion could not be utilized by a defendant convicted and sentenced before December 3, 1999. 208 W.Va. at 445, 541 S.E.2d at 323 n. 24. In footnote twenty-four of *Nichols,* we expressly stated as follows:

While our holding today is applicable to any retrial of Mr. Nichols, our decision has no retroactive application and cannot be used or relied upon by a defendant convicted and sentenced before the filing date of this opinion. "[A] judicial decision in a criminal case is to be given prospective application only if: (a) It established a new principle of law; (b) its retroactive application would retard its operation; and (c) its retroactive application would produce inequitable results."

*Id.* (quoting Syl. Pt. 5, in part, *State v. Blake*, 197 W.Va. 700, 478 S.E.2d 550 (1996)).[7]

The Appellant in the case sub judice was convicted on February 11, 1999, and sentenced on March 8, 1999. In *State v. Coleman*, 208 W.Va. 560, 542 S.E.2d 74 (2000), this Court was asked to apply *Nichols* retroactively to a conviction obtained twenty-four days prior to the filing of the *Nichols* opinion. This Court rejected the defendant's argument, explaining as follows:

> We can quickly dispose of the appellant's second issue. The appellant's case was tried on November 9, 1999, on a day when the decision in *State v. Nichols* was pending in the breast of this Court. The opinion in *Nichols* was filed on December 3, 1999—24 days after the appellant's trial date. The appellant did not make any claim for bifurcation or stipulation at his trial, nor did he take any other action to preserve any alleged error in this regard. Under these facts, we find no grounds under *Nichols* to reverse the appellant's conviction.

208 W.Va. at 562, 542 S.E.2d at 76.

■■■ Our decision on retroactivity is not affected by the fact that the Appellant's case was on appeal at the time *Nichols* was filed. As we recognized and extensively discussed in *Blake*, retroactivity of new case law overruling prior precedent is permitted only under very limited circumstances. In *Blake*, this Court considered the retroactive application of the *State v. Neuman*, 179 W.Va. 580, 371 S.E.2d 77 (1988), requiring a trial court to make a determination on the record regarding whether the defendant knowingly,

voluntarily, and intelligently waived his right to testify in his own behalf. 197 W.Va. at 710, 478 S.E.2d at 560. We were specifically asked in *Blake* to determine "whether the *Neuman* rule is to be applied to cases tried before the *Neuman* decision which had not reached the appellate court until after the effective date of the decision." *Id.* We concluded that the *Neuman* standards were not to be applied retroactively in *Blake*, reasoning that "the rule in *Neuman* was merely a procedural/prophylactic rule to guide courts in future proceedings and was not intended to apply to cases that were tried before the date of the decision." *Id.* at 712, 478 S.E.2d at 562. "To be clear, the *Neuman* requirements, like the *Miranda* warnings, are not constitutional rights themselves but are merely prophylactic standards designed to safeguard the right of every criminal defendant to testify in his or her own behalf." *Id.*

Additionally, the Appellant in the present case consented to the introduction of the evidence of the prior DUI conviction and did not recommend any proposals designed to prevent submission of the matter to the jury, such as stipulation or bifurcation. In that vein, the State emphasizes that even if the principles enunciated in *Nichols* were applied to the Appellant's case, the desired relief would not be forthcoming since the Appellant failed to preserve this issue for appellate review.

Based upon our review of the record, briefs, and arguments of counsel, we conclude that the Appellant's arrest was legal and that the Appellant is not entitled to retroactive application of the principles announced in *Nichols*. We consequently affirm

---

**7.** *See also* Syl. Pt. 5, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979) ("In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored. Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions").

the decision of the Circuit Court of Harrison County.

Affirmed.