Nos. 21-0990 & 21-0991 – *Everett J. Frazier, Commissioner, West Virginia Division of Motor Vehicles v. Steve Briscoe*

**FILED**

**June 15, 2023**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

Armstead, Justice, dissenting in case 21-0991:

## A. Case 21-0991

The main issue in case 21-0991 is whether the arresting officer, Deputy Warner, had probable cause to arrest Respondent Steve Briscoe ("Respondent") for driving under the influence ("DUI"). The Office of Administrative Hearings ("OAH") set forth numerous reasons supporting its finding that Deputy Warner had probable cause to arrest Respondent for DUI. The circuit court reversed the OAH's order, finding that Deputy Warner lacked probable cause. Because I agree with the OAH's order, I dissent from the majority opinion.

The OAH found that Deputy Warner had reasonable grounds to believe that Respondent was DUI based on Deputy Warner's observation that Respondent had slurred speech, bloodshot eyes, and was unsteady while standing. Deputy Warner also noted the odor of alcohol while talking to Respondent. Additionally, the OAH found that (1) Respondent told Deputy Warner that he had not consumed alcohol while at his house; (2) Respondent admitted that he had been driving; (3) Respondent exhibited signs of impairment while performing the horizontal gaze nystagmus test and refused to perform additional testing after being unable to maintain his balance during the instruction stage of the walk-and-turn test; (4) Respondent refused to submit to a preliminary breath test; and (5) Respondent refused a secondary chemical test. Based on these findings, the OAH affirmed the revocation of Respondent's license.

1

The circuit court reversed the OAH's order. It focused on whether Respondent was lawfully placed under arrest. The circuit court concluded that Deputy Warner lacked probable cause based on its finding that (1) there were no witnesses to confirm how Respondent "walked to and from the car"; (2) there was no evidence that Respondent drove under the influence of alcohol; and (3) there was no evidence that Respondent drank before, rather than after, driving. The circuit court also determined that there were no exigent circumstances justifying the warrantless arrest in Respondent's home.

The dispositive issue in this case is whether the arrest for DUI was lawful. As this Court has noted, "[t]o be lawful, the arrest must be supported by probable cause." *Reed v. Pompeo*, 240 W. Va. 255, 262, 810 S.E.2d 66, 73 (2018). This Court has explained that "[p]robable cause to make an arrest without a warrant exists when the facts and circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed." Syl. Pt. 2, in relevant part, *State v. Rahman*, 199 W. Va. 144, 483 S.E.2d 273 (1996). Additionally, the Supreme Court has noted that "[t]he probable-cause standard is incapable of precise definition or quantification into percentages because it deals with probabilities and *depends on the totality of the circumstances*." *Maryland v. Pringle*, 540 U.S. 366, 371, 124 S.Ct. 795, 800 (2003) (emphasis added).

This Court has held that an arresting officer does not have to personally observe an individual operating the motor vehicle while under the influence in order to

2

arrest that individual for DUI. In *State v. Davisson*, 209 W. Va. 303, 308, 547 S.E.2d 241, 246 (2001), we stated: "With particular reference to the offense of drunk driving, this Court acknowledged . . . that an officer having reasonable grounds to believe that a person has been driving while drunk may make a warrantless arrest for that offense even though the offense is not committed in his presence." (Internal citation and quotation omitted). Further, in syllabus point three of *Carte v. Cline*, 200 W. Va. 162, 488 S.E.2d 437 (1997), we held:

> W.Va. Code § 17C-5A-1a(a) (1994) does not require that a police officer actually see or observe a person move, drive, or operate a motor vehicle while the officer is physically present before the officer can charge that person with DUI under this statute, so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person.

*See also State v. Byers*, 159 W. Va. 596, 224 S.E.2d 726 (1976) (finding that driving under the influence does not have to be committed in the presence of the arresting officer).

In the present case, Deputy Warner noted that Respondent had slurred speech, bloodshot eyes, was unsteady while standing, and emitted the odor of alcohol. Further, Respondent told Deputy Warner that he had not consumed alcohol while at his house and admitted to having driven an automobile prior to arriving at his home. Applying the totality of the circumstances test, I agree with the OAH's finding that Deputy Warner had probable cause to arrest Respondent for DUI. Respondent exhibited numerous signs of impairment, admitted to having driven a car, and told Deputy Warner that he had not

3

consumed alcohol since returning to his house. Under these circumstances, it was reasonable for Deputy Warner to conclude that Respondent was DUI.

Additionally, I disagree with the majority opinion's conclusion that exigent circumstances were required to justify the arrest under the facts of this case. An investigating officer[1] knocked on Respondent's door because the police were investigating whether Respondent had committed domestic violence. Respondent answered the door and voluntarily spoke with Deputy Warner.[2] There is no indication that the conversation between Deputy Warner and Respondent took place inside of Respondent's home. Thus, I find that the instant case is similar to *State v. Davisson*, 209 W. Va. 303, 547 S.E.2d 241. In *Davisson*, this Court found that exigent circumstances were not necessary to justify a DUI arrest under the following scenario:

---

[1] Deputy Warner testified that he could not recall if he personally knocked on Respondent's door or if it was another officer.

[2] We described the "knock and talk" rule in *Gable v. Gable*, 245 W. Va. 213, 227 n.10, 858 S.E.2d 838, 852 n.10 (2021) (citations omitted):

> Called the "knock and talk" rule, courts hold that any individual, including a law enforcement officer without a warrant, has an implicit license to approach the front door of a residence to knock and make inquiries. *See*, *e.g.*, *State v. Dorsey*, 234 W. Va. 15, 19, 762 S.E.2d 584, 588 (2014). However, regardless of whether the person knocking is a private citizen or a police officer, the homeowner has no obligation to open the door or speak to the person knocking. *See Kentucky v. King*, 563 U.S. 452, 469-70, 131 S.Ct. 1849, 179 L.Ed.2d 865 (2011) ("When law enforcement officers who are not armed with a warrant knock on a door, they do no more than any private citizen might do. And whether the person who knocks on the door and requests the opportunity to speak is a police officer or a private citizen, the occupant has no obligation to open the door or to speak.").

> [t]he Appellant presented himself to the officer in the Appellant's driveway, rather than in his home or any enclosed area related to the home, and the officer made observations justifying the administration of field sobriety tests. The officer thus had probable cause to arrest the Appellant based upon those witness statements, personal observations, and test results. There is no evidence that the officer entered the Appellant's home. Under the circumstances existing in this case, we do not find that exigent circumstances were necessary to justify the arrest.

209 W. Va. at 308, 547 S.E.2d at 246.

The Supreme Court has noted that it is the presence in the home which prompts the additional requirement of exigent circumstances. *See Payton v. New York*, 445 U.S. 573, 576, 100 S. Ct. 1371, 1374-75 (1980) (holding that "the Fourth Amendment . . . prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest"); *U.S. v. Santana*, 427 U.S. 38, 42, 96 S. Ct. 2406, 2409 (1976) (finding that while standing in the doorway of her house, the defendant was in a public place for purposes of the Fourth Amendment, since "[s]he was not in an area where she had any expectation of privacy."). In the present case, the police knocked on Respondent's door. Respondent voluntarily spoke with Deputy Warner and answered his questions. There is no evidence that this occurred inside of Respondent's house or that Respondent did not consent to any part of this interaction. Therefore, exigent circumstances were not necessary to justify the arrest.

Based on the foregoing, I respectfully dissent from the majority opinion's ruling in case 21-0991. Instead, I would have affirmed the OAH's order upholding the revocation for DUI.

5

Armstead, Justice, joined by Justice Bunn, dissenting in case 21-0990:

## **B. Case 21-0990**

Case 21-0990 concerns the circuit court's December 2, 2021 ruling reversing the DMV's order suspending Respondent's license for driving while his license was revoked. The DMV entered this suspension order following Respondent's testimony at the May 20, 2021 circuit court hearing. Respondent, who delivers pizza for a living, testified that he had been driving for work since the date the revocation orders in case 21-0991 went into effect.[3]

After the DMV issued this revocation, Respondent filed a motion to stay. The circuit court issued an order dismissing this revocation, without holding a hearing, based on its finding in the companion case (case 21-0991) that Respondent's arrest was unconstitutional, that the initial revocation was an abuse of the DMV's discretion, and that "exclusion of unconstitutionally obtained evidence extends not only to shield the accused from direct consequences, but indirect consequences as well." Therefore, the circuit court concluded that the DMV "may not piggyback revocations to achieve its end goal while ignoring procedural protections afforded by the Constitution."

The circuit court committed clear error by entering its dismissal order without holding a hearing and giving the DMV an opportunity to present evidence and

---

[3] The revocation orders went into effect on April 23, 2021. In the OAH's April 9, 2021, final order affirming the revocations for DUI and for refusing to submit to a secondary chemical test, the OAH specified that the revocation orders would go into effect on April 23, 2021, ten business days after the April 9, 2021, order was entered.

6

argument in support of its revocation order.  This Court has observed that judicial review of a DUI revocation order is made pursuant to the State Administrative Procedures Act, West Virginia Code 29A-1-1, *et seq*.  *Dean v. Dep't of Motor Vehicles*, 195 W.Va. 70, 71, 464 S.E.2d 589, 590 (1995).  West Virginia Code § 29A-5-1(a) provides, in relevant part:

> In any contested case *all parties shall be afforded an opportunity for hearing* after at least ten days' written notice. The notice shall contain the date, time and place of the hearing and a short and plain statement of the matters asserted. . . . *An opportunity shall be afforded all parties to present evidence and argument* with respect to the matters and issues involved.

(Emphasis added.)[4]

The circuit court concluded that Respondent's arrest was unlawful and that everything that flowed from it, including the suspension for driving on a revoked license,

---

[4] In syllabus point two of *Frazier v. Talbert*, 245 W. Va. 293, 858 S.E.2d 918 (2021), this Court held:

> "Upon judicial review of a contested case under the West Virginia Administrative Procedure Act, Chapter 29A, Article 5, Section 4(g), the circuit court may affirm the order or decision of the agency or remand the case for further proceedings. The circuit court shall reverse, vacate or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decisions or order are: '(1) In violation of constitutional or statutory provisions; or (2) In excess of the statutory authority or jurisdiction of the agency; or (3) Made upon unlawful procedures; or (4) Affected by other error of law; or (5) Clearly wrong in view of the reliable, probative and substantial evidence on the whole record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.'" Syl. Pt. 2, *Shepherdstown Volunteer Fire Dept. v. State ex rel. State of W.Va. Human Rights Comm'n*, 172 W.Va. 627, 309 S.E.2d 342 (1983).

should be dismissed. Despite its finding that Respondent's arrest was unlawful, the circuit court was required to afford the DMV an evidentiary hearing pursuant to the plain, unambiguous language contained in West Virginia Code § 29A-5-1(a). The majority found that "despite the abolition of this government agency [OAH] and its various procedural statutes, *we must still rely on those statutes* to resolve the questions presented by the DMV's appeal." (Emphasis added). Nonetheless, the majority appears to erroneously rely, at least in part, on the fact that the statute entitling the DMV to a hearing has now been repealed as justification for rejecting the DMV's right to such hearing. The majority opinion simply casts aside the DMV's statutory right to a hearing, stating in Footnote 15, that "the DMV cites the same *now-repealed statutes* to assert it was entitled to a hearing at which it would have offered evidence in support of its claim that Briscoe drove during the weeks his license was suspended. We decline to consider these arguments." (Emphasis added). Regardless of the current status of West Virginia Code § 29A-5-1(a), it is clear that such statute was in effect at the relevant time periods at issue in this case and plainly entitled the DMV to a hearing. Therefore, I dissent from the majority opinion's ruling affirming the circuit court's order in case 21-0990. I would reverse and remand the circuit court's order with instructions for the circuit court to permit the parties to present evidence

and argument on whether the order of revocation the DMV issued to Respondent for driving on a revoked license should be dismissed.[5]

I am authorized to state that Justice Bunn joins me in this separate opinion in case 21-0990.

---

[5] Between the entry of the OAH's order upholding the first two revocations, which went into effect on April 23, 2021, and the circuit court's ruling staying those revocations, which occurred at the end of the circuit court's May 20, 2021, hearing, the first two revocation orders were valid and enforceable such that Respondent was required to comply with them and refrain from driving during this period. Because Respondent was driving during this time period when his license was revoked by an order that had not yet been stayed, it appears that the DMV had a valid basis for his subsequent driving while revoked revocation. *See In re Petition of McKinney*, 218 W. Va. 557, 561, 625 S.E.2d 319, 323 (2005) ("[P]ursuant to W.Va. Code § 17B-4-3(c), driving while revoked for DUI is an offense for which mandatory revocation of a driver's license is required upon conviction. Accordingly, pursuant to W.Va. Code § 17B-3-6(a)(1), the Division was authorized to suspend McKinney's license for driving while revoked for DUI.").