355 S.E.2d 24

**STATE of West Virginia**

v.

**Floyd MULLINS.**

**No. 17130.**

Supreme Court of Appeals of
West Virginia.

March 11, 1987.

John Boettner, Jr., Boettner & Crane, Charleston, for appellant.

Charles G. Brown, Atty. Gen., Mary Beth Kershner, Asst. Atty. Gen., Charleston, for appellee.

McGRAW, Chief Justice:

This is an appeal by Floyd Mullins from a final judgment order entered in the Circuit Court of Roane County following a jury verdict finding him guilty of the first degree murder of one Robert Rucker in violation of West Virginia Code § 61–2–1 (1984 Replacement Vol.). The appellant was sentenced to confinement in the penitentiary for the rest of his natural life, with a recommendation for mercy. He now appeals, making numerous assignments of error. We need not address each of these contentions, but because we agree with the appellant that there were no exigent circumstances to justify his warrantless arrest, we reverse his conviction and remand the case to the Circuit Court of Roane County for a new trial.

While the record is replete with details concerning the appellant's lifestyle and the events of Christmas eve, 1983, a brief recounting of the relevant facts will suffice for our analysis. The appellant and Rucker lived together in the appellant's house on the sparsely populated Left Hand Hollow near Walton in Roane County. A neighbor saw Rucker walking along the road toward Robert Mullins' (the appellant's son) house around 9:15 a.m. on a bitterly cold December 24, 1983. Between 9:30 a.m. and 10:00 a.m. another neighbor approaching Robert's house saw Rucker's body in the driveway. The neighbor roused Robert, and, after determining that Rucker was dead, they went to a nearby house and called the sheriff's office at 10:45 a.m. to report the murder.

Two sheriff's deputies reached Robert's house at 11:30 a.m., and, having been notified by the sheriff's office, State Police Trooper Sanders arrived and took over the investigation at about 11:45 a.m. Trooper Sanders conducted an investigation, examining the scene and questioning the deputies, Robert, and the neighbors. One deputy was assigned to watch the body and the other was sent to watch the appellant's house. Several times during the investigation, Trooper Sanders was in radio contact with the state police communications center. After he decided to arrest the appel-

lant, Trooper Sanders radioed for back-up. Some time between 12:30 p.m. and 1:00 p.m. a state police sergeant, a corporal, and two more troopers arrived at the scene, as did a free-lance photographer called in by the state police.

Robert, Trooper Sanders, and the corporal approached the appellant's house at 12:55 p.m. Robert called to his father, who came to the door. The appellant was immediately placed under arrest, searched, and taken to the police cruiser. Trooper Sanders orally advised the appellant of his constitutional rights and asked him to sign a waiver of those rights. The appellant complied with this request. The trooper then wrote out the appellant's statement, read it back to him, and had him sign it. The corporal asked for and received permission to search the appellant's house. That search produced numerous items, including the apparent murder weapon, which were introduced into evidence at trial.

## I.

Both the federal and state constitutions protect citizens from unreasonable arrests, and provide for the issuance of a warrant upon a showing of probable cause. U.S. Const. amend. IV; W.Va. Const. art. III, § 6. Warrantless arrests are possible, however, and "the right to arrest in public without a warrant, based on probable cause that the person has or is about to commit a felony, is the general if not universal rule in this country." *State v. Craft*, 165 W.Va. 741, 754, 272 S.E.2d 46, 55 (1980). A different rule applies when government intrudes into the privacy of a person's home. *Id..* A warrantless arrest in the home must be justified not only by probable cause, but by exigent circumstances which make an immediate arrest imperative. *State v. Farmer*, 173 W.Va. 285, 315 S.E.2d 392 (1984); *Craft*, 165 W.Va. 741, 272 S.E.2d 46; *State v. Canby*, 162 W.Va. 666, 252 S.E.2d 164 (1979).

In West Virginia, we jealously guard a person's right to privacy in the home and have strictly limited the circum-

stances justifying a warrantless arrest in the home.

The test of exigent circumstances for the making of an arrest for a felony without a warrant in West Virginia is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test based on what a reasonable, well-trained police officer would believe.

Syl. Pt. 2, *Canby*, 162 W.Va. 666, 252 S.E.2d 164.

■ At various points in the prosecution of the appellant, the State attempted to show that each of these exigent circumstances was present on December 24, 1983. A review of the record reveals no reasonable grounds to have arrested the appellant before obtaining a warrant. Rucker died sometime between 9:30 a.m. and 10:00 a.m. Police were on the scene by 11:30 a.m. Sometime around noon, Trooper Sanders decided to arrest the appellant, but waited until the additional law enforcement officials he radioed for had arrived. The arrest occurred at 12:55 p.m., at least three hours after the stabbing and one and one-half hours after the police arrived.

A deputy was watching the appellant's house during the entire investigation, and there was no indication that the appellant attempted to flee or threatened the safety or property of others. While there might appear to have been some legitimate concern that the appellant would be able to destroy evidence, this concern fails when one recalls that the appellant had already had several hours alone to hide evidence and that Trooper Sanders decided to wait for back-up before making the arrest; a warrant could have been brought to the scene by those officers.

By the time of the arrest, at least seven officers, the police photographer, and the coroner had been summoned. Contrary to the implication of the State's brief, Trooper Sanders was in contact with the communications center on several occasions during the investigation. No attempt was made to explain why an arrest warrant could not easily have been obtained by any one of the platoon of state police officers who Trooper Sanders called in, and no explanation occurs to us. The warrantless arrest was clearly a violation of the appellant's constitutional rights.

## II.

■ The appellant's illegal arrest taints his subsequent oral statement and his putative consent to the warrantless search of his home. The rule in West Virginia is that "[e]xclusion of a confession obtained as a result of an illegal arrest without a warrant is mandated unless the causal connection between the arrest and the confession has been clearly broken." Syl. Pt. 3, *State v. Sprouse*, 171 W.Va. 58, 297 S.E.2d 833 (1982) (quoting Syl. Pt. 3, *Canby*, 162 W.Va. 666, 252 S.E.2d 164). Simply advising the person in custody of his constitutional rights is not sufficient to break that connection. *Canby*, 162 W.Va. at 670, 252 S.E.2d at 167. In the instant case, the appellant's oral statement was given just minutes after his illegal arrest, while he was confined to the police cruiser with the two arresting officers, and before he was presented to a neutral magistrate in compliance with section 62–1–5 of the West Virginia Code. The appellant's statement may not be used against him on retrial, thus negating the advantage to the prosecution resulting from his illegal arrest. *Id.*, 162 W.Va. at 669 n. 2, 252 S.E.2d at 167 n. 2; *see Dunaway v. New York*, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); *State v. Stanley*, 168 W.Va. 294, 284 S.E.2d 367 (1981).

■ The same reasoning applies to prohibit the introduction into evidence of any items obtained during the search of the appellant's home.

Searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment and Arti-

cle III, Section 6 of the West Virginia Constitution—subject only to a few specifically established and well-delineated exceptions. The exceptions are jealously and carefully drawn, and there must be a showing by those who seek exemption that the exigencies of the situation made that course imperative.

Syl. Pt. 1, *State v. Moore,* 165 W.Va. 837, 272 S.E.2d 804 (1980). "Evidence obtained as a result of a search incident to an unlawful arrest cannot be introduced against the accused upon his trial." Syl. Pt. 6, *State v. Thomas,* 157 W.Va. 640, 203 S.E.2d 445 (1974).

This Court has recognized that "[w]here a person voluntarily and knowingly consents to a search of his premises, such a search may be conducted in the absence of a search warrant." Syl. Pt. 1, *State v. Basham,* 159 W.Va. 404, 223 S.E.2d 53 (1976); *See Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). We have observed, however, that, as a general rule, a person in custody as a result of an illegal arrest is in no position to resist an officer's request to allow his home to be searched. *Thomas,* 157 W.Va. at 653, 203 S.E.2d at 454. The appellant's testimony is indicative of the nature of his supposed consent to the search, "I just went along with him. I won't resist the law ... they will overpower you and take you anyhow or handcuff you and I have known them to mistreat people." Under the facts of this case, we conclude that the appellant's consent was not freely and voluntarily given, but was merely submission to authority.

Because there were no exigent circumstances to justify the appellant's warrantless arrest, and because that illegal arrest tainted the voluntariness of appellant's oral statement and consent to search, his conviction is reversed and the case is remanded for a new trial consistent with this opinion.

Reversed and remanded.