483 S.E.2d 21

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Phillip CHEEK, Defendant Below, Appellant.**

**No. 23381.**

Supreme Court of Appeals of West Virginia.

Submitted Sept. 17, 1996.

Decided Dec. 5, 1996.

Darrell V. McGraw, Jr., Attorney General, Rex Burford, Senior Assistant Attorney General, Daynus Jividen, Senior Assistant Attorney General, Charleston, for Appellee.

George A. Stolze, Huntington, for Appellant.

PER CURIAM:[1]

The central issue presented in this case is whether Phillip Cheek's warrantless arrest in

1. The Honorable Arthur M. Recht resigned as    Justice of the West Virginia Supreme Court of

his home was valid. Mr. Cheek was arrested for the misdemeanor offense of driving under the influence of alcohol, second offense; however, the alleged offense was committed outside the presence of the arresting officer. The State maintains that they had probable cause and that exigent circumstances, namely, the destruction of evidence through metabolism, required an immediate arrest, but, Mr. Cheek argues that the arresting officer lacked probable cause and that there were not exigent circumstances. Given the circumstances as shown in the record below, we hold that because the arresting officer lacked probable cause and there were not exigent circumstances, Mr. Cheek's arrest was invalid, and therefore, we reverse the circuit court.[2]

## I.

## FACTS AND BACKGROUND

Shortly after eight o'clock on the evening of August 27, 1994, two Huntington officers on foot patrol were summoned by several women to Doulton Avenue because Mr. Cheek had moved a barricade blocking the street and had driven his car through a crowd. Doulton Avenue was barricaded to accommodate a church related block party. Earlier in the day, Mr. Cheek, who lived on Doulton Avenue, moved his stereo speakers into his house after several church members spoke to him about the music disturbing the block party. Various witnesses testified that Mr. Cheek drove into the crowd of about 150 persons and continued driving even though he was requested to stop. His speed was estimated between five to ten, and twenty-five to thirty miles per hour. Mr. Cheek drove about half a block, pulled his car into the yard or in front of his home and went inside his home. One witness testified that Mr. Cheek was "staggering" when he left his car to go into his home; the other witness, the pastor of the church sponsoring the block party, testified that he did not see anything unusual about Mr. Cheek as he entered his home.

The foot patrol officers, who had visited the party several minutes before the incident, were still in the neighborhood and were summoned back to the block party. One of the women who summoned the officers estimated that it took about fifteen minutes for the officers to return. The officers then spent several minutes talking to persons who were attending the block party, and they informed the officers where Mr. Cheek lived. The officers then knocked on Mr. Cheek's door. After somewhere between five and thirty minutes, Mr. Cheek came to door.[3] When Mr. Cheek did not immediately come to the front door, one of the officers went to the rear door. When Mr. Cheek finally came to his front door, because the officer at the door saw an object in Mr. Cheek's hand, he forcibly pulled Mr. Cheek out of his home and onto the porch, causing the two to fall over the porch railing into the yard.[4] Mr.

Appeals effective October 15, 1996. The Honorable Gaston Caperton, Governor of the State of West Virginia, appointed him Judge of the First Judicial Circuit on that same date. Pursuant to an administrative order entered by this Court on October 15, 1996, Judge Recht was assigned to sit as a member of the West Virginia Supreme Court of Appeals commencing October 15, 1996 and continuing until further order of this Court.

2. Because of our reversal for lack of probable cause, there is no need to address Mr. Cheek's assignment of error concerning the admissibility of the breathalyzer test results. *See State v. Hood*, 155 W.Va. 337, 184 S.E.2d 334 (1971) and *State v. Franklin*, 174 W.Va. 469, 327 S.E.2d 449 (1985) for discussions of the proper foundation for the admissibility of breathalyzer test results.

3. One witness estimated that Mr. Cheek took five minutes to answer the door, but another witness estimated that it took "about twenty or thirty minutes [before] he came to the door." The police officer estimated that it took about three to four minutes for Mr. Cheek to answer the door.

4. Officer Larry M. Zimmerman gave the following testimony about what happened when Mr. Cheek answered their knock:

A. (Zimmerman)
When he came to the door he just kind of barely opened it at first and I saw something in his hand. I wasn't sure what it was. So, I just immediately grabbed him and pulled him out on to the porch where we could, you know, find out because at the time we still were unaware of what was going on and what his problem was as far as this incident is concerned.

Q. (Neal, Assistant Prosecuting Attorney for Cabell County)
Okay. So, what was your concern at the time you grabbed him?

Cheek ended on the ground, where he was handcuffed. Although the object in Mr. Cheek's hand turned out to be a telephone, the officer testified that he acted out of concern for his personal safety. The officer testified that when he pulled Mr. Cheek out of his home or when Mr. Cheek answered the door, he smelled alcohol on Mr. Cheek. Thereafter because of the circumstances, the officer administered the horizontal gaze nystagmus test, a field sobriety test. After Mr. Cheek failed the test, he was formally arrested and was taken immediately to the waiting police cruiser. Apparently a third officer in a cruiser arrived in time to assist.

At police headquarters, an intoxilyzer test was administered, along with two other sobriety tests, the one-legged stand, and the walk and turn tests. Mr. Cheek failed all three tests and the intoxilyzer reading was .20, twice the ten hundredth of one percent required by W. Va.Code 17C–5–8 (1994) as proof of intoxication.[5] Because Mr. Cheek had a prior conviction for driving under the influence, he was charged with violating W.Va.Code 17C–5–2 (1996)[6], second offense driving under the influence, a misdemeanor.

A. My safety.
Q. Okay. And what happened at that point?
A. As I pulled him out, you know, I could smell—as soon as he opened the door I could smell that he had been drinking. As I pulled him out his—due to his imbalance, I guess, we kind of ended up going over his porch banister and he ended up on the ground. We went ahead and placed him in handcuffs. He wasn't actually under arrest. We were just detaining and—to—for our safety. That's one of the procedures we do is go ahead and handcuff and then we checked him to see if he had any weapons.

5. W. Va.Code 17C–5–8 (1994) provides, in pertinent part:
(c) Evidence that there was, at that time, ten hundredths of one percent or more, by weight, of alcohol in his or her blood, shall be admitted a prima facie evidence that the person was under the influence of alcohol.

6. W. Va.Code 17C–5–2 (1996) provides, in pertinent part:
(d) Any person who:
(1) Drives a vehicle in this state while:
(A) He is under the influence of alcohol; or
* * * * * *
(E) He has an alcohol concentration in his or her blood of ten hundredths of one percent or more, by weight:

The matter was first considered in magistrate court. After he was found guilty, Mr. Cheek appealed to circuit court. After a bench trial, the circuit court found Mr. Cheek guilty. The circuit court reasoned that Mr. Cheek's arrest was valid because although the officers were not present when Mr. Cheek was driving, they witnessed Mr. Cheek under the influence of alcohol, the second element of driving under the influence. Mr. Cheek then appealed to this Court.

## II.

## DISCUSSION

The primary issue is whether Mr. Cheek's arrest was lawful. We note that W. Va.Code 17C–5–4 (1994) allows the administration of a preliminary breath test when the officer has "reasonable cause to believe" that this person was driving under the influence and "incidental to a lawful arrest," a secondary test for intoxication shall be administered "at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person committed" driving under the influence.[7]

(2) Is guilty of a misdemeanor, and upon conviction thereof, shall be confined in jail for not less than one day nor more than six months, . . . and shall be fined not less than one hundred dollars nor more than five hundred dollars.

* * * * * *

(j) A person violating any provision of subsection . . . (d) . . . of this section shall, for the second offense under this section, be guilty of a misdemeanor, and, upon conviction thereof, shall be confided in jail for a period of not less than six months nor more than one year, and the court may, in it discretion, impose a fine of not less than one thousand dollars nor more than three thousand dollars.

7. W. Va.Code 17C–5–4 (1994), provides, in pertinent part:

A preliminary breath analysis may be administered in accordance with the provisions of section five [§ 17C–5–5] of this article whenever a law-enforcement officer has reasonable cause to believe a person to have committed an offense prohibited by section two [§ 17C–5–2] of this article or by an ordinance of a municipality of this state which has the same elements as an offense described in said section two of this article. A secondary test of blood, breath or

In *State v. Byers,* 159 W.Va. 596, 224 S.E.2d 726 (1976), we discussed the requirements of a lawful warrantless arrest of a person charged with a violation of W. Va. Code 17C–1–1 *et seq.* *Byers* began by noting that generally warrantless arrests for misdemeanors cannot be effected unless the offense is committed in the officer's presence.

Ordinarily a warrantless arrest may be made by an officer only when he has reasonable grounds to believe that a felony has been committed. A warrantless arrest for a misdemeanor cannot be effected unless the offense is committed in the presence of the officer. (Footnotes omitted.)

*Byers,* 159 W.Va. at 602–3, 224 S.E.2d at 731. However, because driving under the influence, third offense is a felony, we held that "this particular offense does not have to be committed 'in the presence' of the officer in order to justify a warrantless arrest." *Byers,* 159 W.Va. at 603, 224 S.E.2d at 731. Syl. pt. 1 of *Byers* states:

Under the provisions of W. Va.Code, 17C–5A–1, *as amended,* a law-enforcement officer may arrest a person and a test for blood alcohol may be administered incident thereto at the direction of the arresting officer who has reasonable grounds to believe the person to have been driving a motor vehicle upon a public highway while under the influence of intoxicating liquor.

Thus the question in the case *sub judice,* is did the officers know when they arrested Mr. Cheek that he had been driving under the influence. According to Syl. pt. 2 of *Byers,* one of the ways an arrest occurs is when the person is taken, seized or detained "by touching or putting hands on him." Syl. pt. 2 of *Byers* provides:

An arrest is the taking, seizing or detaining of the person of another (1) by touching or putting hands on him; (2) by any act or speech that indicates an intention to take him into custody and that subjects him to the actual control and will

of the person making the arrest; or (3) by the consent of the person to be arrested.

In this case, Mr. Cheek was arrested when the officers reached through the front door of his home to pull Mr. Cheek onto his porch, over his porch railing and into the yard. The issue is what did the officers know about the driving under the influence offense when Mr. Cheek was arrested; specifically, when the officer reached into Mr. Cheek's home to grab him did the officer have reasonable grounds to believe that Mr. Cheek had been driving under the influence.

Most of our case law dealing with driving under the influence does not involve arresting someone in their home. In *State v. Byers,* the suspect was not arrested until 14 days after an accident where there was a strong odor of alcohol. In *State v. Shugars,* 180 W.Va. 280, 376 S.E.2d 174 (1988)(per curiam), the suspect was arrested in a hospital where he was transported after an accident where there was alcohol present and on the suspect's breath. In *State v. Franklin, supra* note 1, the suspect was again transported to the hospital and arrested after the trooper detected the odor of alcohol on the suspect. In *Franklin,* 174 W.Va. at 472, 327 S.E.2d at 452–53, we noted:

*Byers,* distinctly envisaged the situation presented by this case where the drunk driver cannot be arrested at the scene of the crime because he has been rushed to the hospital for emergency medical care. We thus hold that since the offense of driving under the influence of alcohol resulting in death under *W. Va.Code* 17C–5–2 [1981] may be, depending on the circumstances, either a felony or misdemeanor, a lawful, warrantless arrest may be made, upon reasonable suspicion of probable cause, at a hospital by an officer before whom the offense was *not* committed if the suspect has been taken to the hospital from the scene of the accident for emergency medical care.

urine shall be incidental to a lawful arrest and shall be administered at the direction of the arresting law-enforcement officer having reasonable grounds to believe the person to have committed an offense prohibited by section

two of this article or by an ordinance of a municipality of this state which has the same elements as an offense described in said section two of this article.

However, this case is not the usual driving under the influence-*Byers* circumstances of an accident, odor of alcohol at the accident and injuries requiring treatment. Rather, Mr. Cheek was in his home.

■ In *State v. Mullins,* 177 W.Va. 531, 533, 355 S.E.2d 24, 26 (1987), we held that when the government intrudes into a person's home, a warrantless arrest must be justified by *probable cause* and *the presence of exigent circumstances.* These requirements arise from constitutional protections. U.S. Const. amend IV; W.Va. Const. art. III, § 6. Syl. pt. 1 of *Mullins* states:

Both the federal and state constitutions protect citizens from unreasonable arrests, and provide for the issuance of a warrant upon a showing of probable cause. U.S. Const. amend. IV; W.Va. Const. art. III, § 6.

■ According to Syl. pt. 1 of *State v. Plantz,* 155 W.Va. 24, 180 S.E.2d 614 (1971), *overruled in part on other grounds, State ex rel. White v. Mohn,* 168 W.Va. 211, 283 S.E.2d 914 (1981), probable cause to arrest without a warrant exists "when the facts and the circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed or is being committed." *See State v. Worley,* 179 W.Va. 403, 412, 369 S.E.2d 706, 715, *cert. denied,* 488 U.S. 895, 109 S.Ct. 236, 102 L.Ed.2d 226 (1988).

■ Syl. pt. 2 of *Mullins* states:

A warrantless arrest in the home must be justified not only by probable cause, but by exigent circumstances which make an immediate arrest imperative.

*See State v. Davis,* 170 W.Va. 376, 294 S.E.2d 179 (1982); *State v. Craft,* 165 W.Va. 741, 272 S.E.2d 46 (1980).

■ Syl. pt. 3 of *Mullins* explains when exigent circumstances exist for an arrest for a felony by stating:

"The test of exigent circumstances for the making of an arrest for a felony without a warrant in West Virginia is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test based on what a reasonable, well-trained police officer would believe." Syl. Pt. 2, *State v. Canby,* 162 W.Va. 666, 252 S.E.2d 164 (1979).

*See Bennett v. Coffman,* 178 W.Va. 500, 361 S.E.2d 465 (1987), *overruled in part on other grounds, State v. Chase Securities, Inc.,* 188 W.Va. 356, 424 S.E.2d 591 (1992) (noting that hot pursuit can be an exigent circumstance).

■ In this case, when the officers knocked at Mr. Cheek's home, they knew about Mr. Cheek's driving through the crowd; however, although the officers may have suspected that alcohol was involved, there was no reasonable grounds for that belief until the odor of alcohol was detected when the officer grabbed Mr. Cheek. The complaint said, in pertinent part, "Several witness [sic] saw the suspect drive the vehicle [through the church social] [sic] stop it. Get out of the vehicle and run into 1622 Doulton Ave." The arresting officer testified that when he pulled Mr. Cheek from his home, the officers "were unaware of what was going on and what his problem was as far as this incident is concerned." *See supra* note 4, for a more complete transcript of the officer's testimony. In this case, there was no reasonable grounds to arrest Mr. Cheek for driving under the influence until after the officer grabbed Mr. Cheek. The officer testified that he first smelled alcohol when he pulled Mr. Cheek from his home or when Mr. Cheek "barely" opened the door. Even then, given the time spent by Mr. Cheek alone in his home, there is a question as to when the alcohol was consumed. At most, the officers may have had probable cause for a automobile misdemeanor, requiring a warrant for an arrest.

We also note that no exigent circumstance was shown. Although the State maintains that the metabolism of alcohol created an exigent circumstance, the officers did not have reasonable grounds based on their investigation before the arrest to use the me-

tabolism of alcohol as an exigent circumstance. Because Mr. Cheek was in his home, he was not liable to flee, destroy evidence or endanger the safety or property of others; especially with the two officers outside. Finally, we note that although the responding officers were on foot patrol, by the time Mr. Cheek was arrested, a third officer in a cruiser was present. Given the communications which must have occurred to bring the additional officer to the scene, the responding officers could have obtained an arrest warrant and probably would have if probable cause existed at that time to arrest Mr. Cheek for driving under the influence.

Clearly, Mr. Cheek should not have driven through the church block party. His action angered and upset the area residents. However, neither his action nor the residents' response is a valid justification for violating Mr. Cheek's constitutional rights. When the evidence of what the officers knew when they knocked on Mr. Cheek's front door is dispassionately reviewed, the lack of probable cause is apparent. The requirement of a warrant for arrest injects such a review by an uninvolved party at a early stage, thereby relieving the problem of determining when various knowledge was acquired.

Based on the record, we find that because the police lacked probable cause, Mr. Cheek's warrantless arrest for driving under the influence in his home was illegal.

For the above stated reasons, we reversed the decision of the Circuit Court of Cabell County.

Reversed.

RECHT, Judge, sitting by temporary assignment.