IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2023 Term

_____

Nos. 21-0990 and 21-0991

_____

FILED

June 15, 2023

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

EVERETT J. FRAZIER, COMMISSIONER,
WEST VIRGINIA DIVISION OF MOTOR VEHICLES,
Petitioner,

v.

STEVE BRISCOE,
Respondent.

_____

Appeal from the Circuit Court of Putnam County
The Honorable Phillip M. Stowers, Judge
Civil Action Nos. 21-AA-1 and 21-AA-2

AFFIRMED

_____

Submitted: March 21, 2023
Filed: June 15, 2023

Patrick Morrisey
Attorney General
Michael R. Williams
Senior Deputy Solicitor General
Elaine L. Skorich
Assistant Attorney General
Charleston, West Virginia
Counsel for the Petitioner

Shawn D. Bayliss, Esq.
Bayliss Law Offices
Hurricane, West Virginia
Counsel for the Respondent

JUSTICE HUTCHISON delivered the Opinion of the Court.

JUSTICE ARMSTEAD dissents and reserves the right to write separately.

JUSTICE BUNN concurs, in part, and dissents, in part, and reserves the right to write separately.

**SYLLABUS BY THE COURT**

1. "A warrantless arrest in the home must be justified not only by probable cause, but by exigent circumstances which make an immediate arrest imperative." Syl. Pt. 2, *State v. Mullins*, 177 W. Va. 531, 355 S.E.2d 24 (1987).

2. "The test of exigent circumstances for the making of an arrest for a felony without a warrant in West Virginia is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test based on what a reasonable, well-trained police officer would believe." Syl. Pt. 2, *State v. Canby*, 162 W. Va. 666, 252 S.E.2d 164 (1979).

3. "In the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used." Syl. Pt. 1, *Miners in General Group v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941), *overruled, in part, on other grounds by Lee–Norse Co. v. Rutledge*, 170 W. Va. 162, 291 S.E.2d 477 (1982).

HUTCHISON, Justice:

Respondent Steve Briscoe was arrested in his home without a warrant for a misdemeanor committed elsewhere. Cases interpreting the United States and West Virginia Constitutions provide that when a law enforcement officer arrests someone in their home without a warrant, the officer must articulate some "exigent circumstance" that made an immediate, warrantless arrest imperative. The arresting officer articulated no urgent need to arrest Briscoe and admitted he would have obtained a warrant from an impartial magistrate if Briscoe had not answered another officer's knock at the door.

Evidence adduced during the arrest suggested Briscoe might have driven while intoxicated from the scene of the misdemeanor to his home. The Petitioner, the West Virginia Division of Motor Vehicles ("the DMV"), applied the evidence in three separate decisions to revoke Briscoe's driver's license. However, now-repealed West Virginia Code § 17C-5A-2(f)(2)(2015)[1] provided that the DMV's revocation decisions were valid only if Briscoe had been "lawfully" arrested or "lawfully" taken into custody. It is axiomatic that a lawful arrest is one that follows constitutional requirements. Briscoe appealed the three revocation decisions to the circuit court.

The circuit court found that Briscoe had not been lawfully arrested without a warrant. The circuit court reversed the DMV's revocation decisions and found them to be

---

[1] As we discuss below, many of the arguments in this appeal concern the interpretation of statutory provisions that were wholly repealed by the Legislature in 2023. *See* H.B. 2564.

clearly wrong in light of the now-repealed West Virginia Code § 17C-5A-2(f)(2). The DMV appeals the circuit court's rulings, but we see no error and affirm the circuit court.

## I. Factual and Procedural Background

On November 28, 2019, Thanksgiving morning, the Putnam County 911 center received a call about people arguing at a residence in Hurricane, West Virginia. At least three sheriff's deputies were dispatched, including Deputy Joshua Warner. Upon arriving at the residence, the deputies spoke with a woman who said she had been arguing with respondent Briscoe. The woman alleged that the argument had turned physical, and Deputy Warner saw a mark on the woman's chest. Deputy Warner later wrote in a report that the woman said Briscoe "had just left her residence" in a black car.

A search then began for Briscoe; as Deputy Warner later said, "the whole county was looking for his car." Minutes later, deputies found Briscoe's black car in the driveway of Briscoe's home several miles away in Scott Depot, West Virginia. Believing Briscoe was inside the home, a deputy knocked on the door. Deputy Warner later testified that, if Briscoe "hadn't answered the door," he "would have got a warrant on him for domestic battery."

2

Briscoe answered the door, and Deputy Warner placed him under arrest for misdemeanor domestic battery.[2] Deputy Warner was adamant that he arrested Briscoe solely for this offense. As he testified at a later DMV hearing, the deputy said he "[p]laced him under arrest for domestic battery." A question by the DMV's lawyer affirmed that the deputy's "probable cause for placing Mr. Briscoe under arrest was based on an alleged domestic offense." Once the arrest was complete, Deputy Warner said he transported Briscoe "to the Putnam County Courthouse for processing."

The woman who alleged domestic violence told deputies that Briscoe "was driving 'drunk'" when he left her residence. Deputy Warner wrote in a report that "[w]hile speaking to [Briscoe at his home] I could smell a strong odor of alcohol." The deputy also wrote that he asked Briscoe only one question at his home: "if he had been drinking while he was at this location and he stated no." Upon arriving at the courthouse, Deputy Warner began processing Briscoe by filling out a six-page form titled "DUI Information Sheet" related to the offense of driving under the influence (or "DUI"). Deputy Warner checked boxes on the form that Briscoe had "slurred speech," an "odor of alcoholic beverage," and "bloodshot, watery eyes." At 11:20 a.m., Deputy Warner began speaking with Briscoe by reading Miranda warnings from the DUI Information Sheet. The deputy then asked two

---

[2] West Virginia Code § 61-2-28(a) (2017) provides that any person who commits a domestic battery involving "physical contact . . . is guilty of a misdemeanor" subject to confinement up to a year. Similarly, West Virginia Code § 61-2-28(b) creates the offense of domestic assault, such that a person who attempts to inflict a violent injury "is guilty of a misdemeanor" subject to confinement "not more than six months." Deputy Warner subsequently charged Briscoe with both of these offenses.

questions from the form: "were you operating a vehicle" and "where?"  Briscoe answered, "yes sir" and "Scott Depot."  The deputy wrote that, thereafter, Briscoe refused to answer any more of the questions on the form.

Deputy Warner then turned to the portion of the DUI Information Sheet titled "pre-arrest screening" that outlined several field sobriety tests.[3]  Following the outline on the form, the deputy performed a horizontal gaze nystagmus test on Briscoe which the deputy said showed signs of impairment.  Briscoe was then instructed on how to perform a walk and turn test; the deputy wrote that Briscoe refused to perform the test and "stated he wanted his lawyer."  The deputy recorded, however, that Briscoe could not maintain his balance.  Finally, Deputy Warner asked Briscoe twice to take a secondary chemical test (a breathalyzer), but Briscoe refused.

The deputy later filed a criminal complaint against Briscoe for three charges: misdemeanor domestic battery; misdemeanor domestic assault; and driving under the influence.  At oral argument, counsel represented that these criminal charges were later dismissed for reasons not apparent from the record.  However, for purposes of this appeal, the deputy also forwarded the DUI Information Sheet and other documents to the DMV.

---

[3] In their brief to this Court, counsel for the DMV incorrectly claim that Deputy Warner first conducted the "pre-arrest screening" sobriety tests, and thereafter read Briscoe his Miranda warnings and asked questions.  However, Deputy Warner was clear in his testimony below that the sobriety tests "were conducted after the Miranda Rights portion."

After receiving these documents, in two separate orders dated December 11, 2019, the DMV suspended Briscoe's driver's license. The first order suspended his license for driving under the influence, the second for refusing to submit to the designated secondary chemical test. Asserting that his warrantless arrest in his home had been unlawful, Briscoe objected to the DMV's orders and requested a hearing before the DMV's Office of Administrative Hearings ("OAH"). A hearing was held before the OAH on August 7, 2020. Deputy Briscoe was the sole witness to testify, and he testified that he never saw Briscoe operate his vehicle and that he encountered Briscoe "inside his residence."[4]

The OAH affirmed the DMV's two orders suspending Briscoe's license in a decision dated April 9, 2021 (and which, by its terms, took effect on April 23, 2021). The OAH found that Briscoe had been "lawfully arrested" and that a preponderance of the

[4] Counsel for the parties made arguments to this Court based on the mistaken notion that, before Briscoe's arrest, Deputy Warner spent 40 minutes speaking with Briscoe at his home and therein leisurely developed evidence to support a DUI arrest. Counsel seem to have based this notion on a lone, erroneous statement by the deputy. A written log by the 911 center indicates that deputies were dispatched to the woman's residence at 10:21 in the morning and arrived at 10:22. The search began for Briscoe and his car around 10:26, and the written log records deputies were "on scene" at Briscoe's home at 10:43. Deputy Warner testified that another deputy arrived at Briscoe's home first. The written log shows someone had Briscoe under arrest at 11:02 or 11:03 (there are two different entries) and began transporting him at 11:03. In sum, the 911 log seems clear that about 40 minutes elapsed between the deputies' arrival at the woman's residence and their arrest of Briscoe. This written log was provided to the DMV by Deputy Warner. However, on the DUI Information Sheet, Deputy Warner noted that his "time of initial contact" was at 10:22. Confusingly, Deputy Warner subsequently testified that he first made contact *with Briscoe* at 10:22. Deputy Warner's testimony, and the arguments of counsel based on that testimony, are clearly belied by the written log contained in the record.

5

evidence showed Briscoe had driven a vehicle while under the influence of alcohol and had refused to take a secondary chemical test.

Five days later, on April 14, 2021, Briscoe appealed the OAH's decision to the circuit court, and he again asserted that the deputy's warrantless arrest of him in his home had been unlawful. Briscoe also filed a motion asking the circuit court for a stay of the OAH's decision;[5] a hearing on the motion was held on May 20, 2021. Briscoe testified to the circuit court that his livelihood rested on his job as a delivery driver for a pizza restaurant. Counsel for the DMV reminded Briscoe about the effective date of the OAH decision, and asked if Briscoe had "been driving since April 23rd of this year?" Briscoe answered that he had, but said he was unaware he could not drive because his lawyer left him "under the impression that until we had this motion hearing" he could keep driving. Briscoe's lawyer then intervened and said, "if it's an error, blame it on me." At the conclusion of the hearing, the circuit court granted Briscoe's motion to stay the OAH's decision upholding the DMV's first two suspension orders.

It appears that, following the May 20th hearing, counsel for the DMV sent a copy of the hearing transcript to her client. On June 24, 2021, the DMV entered a third suspension order declaring that the DMV's "evidence shows that you drove on May 20,

---

[5] W. Va. Code § 17C-5A-2(s) provided that a circuit court could grant a stay of an OAH order for up to 150 days upon a finding that "that there is a substantial probability that the appellant shall prevail upon the merits and the appellant will suffer irreparable harm if the order is not stayed[.]" *See State ex rel. Miller v. Karl*, 231 W. Va. 65, 743 S.E.2d 876 (2013). As discussed below, the Legislature has repealed this statute.

2021, while your license was suspended for driving under the influence." This third order declared that the DMV was suspending Briscoe's license for a period of six months.

Briscoe promptly appealed the third suspension order to the circuit court and again sought a stay. In an order dated July 9, 2021, the circuit court declared it was halting the DMV's "crusade to strip a pizza delivery driver of a license to earn a living pending the resolution of this proceeding." The circuit court stayed the DMV's third suspension order and prohibited the DMV from instituting any further suspension against Briscoe arising from the facts of this case.

Thereafter, the circuit court heard arguments from the parties on Briscoe's central contention: that the deputy's warrantless arrest in Briscoe's home had been unlawful. In an order dated November 8, 2021, the circuit court agreed with Briscoe and reversed the OAH's decision revoking Briscoe's license. Under now-repealed West Virginia Code § 17C-5A-2(f)(2), the OAH was required to assess whether Briscoe "was *lawfully* placed under arrest for an offense involving driving under the influence of alcohol" or was "*lawfully* taken into custody for the purpose of administering a secondary test[.]" The circuit court's analysis centered on the Fourth Amendment to the United States

Constitution,[6] and Article III, Section 6 of the West Virginia Constitution.[7] They provide that a warrantless arrest in the home is presumptively unlawful unless the arresting officer shows two things: probable cause to believe an offense had been committed; and exigent circumstances which made an immediate arrest imperative. Syl. pt. 2, *State v. Mullins*, 177 W. Va. 531, 355 S.E.2d 24 (1987).

The circuit court first concluded that Deputy Warner lacked probable cause to arrest Briscoe in his home for DUI, primarily because no witness testified to seeing Briscoe drive under the influence of alcohol. Second, and more significantly, the circuit court found that there were no exigent circumstances to support the arrest in Briscoe's home without a warrant. The test for exigent circumstances involves assessing whether the arresting law enforcement officer had reasonable grounds to believe that if an immediate, warrantless arrest were not made, the accused would be able to destroy

---

[6] The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

[7] Section 6 of Article III of the West Virginia Constitution provides:

> The rights of the citizens to be secure in their houses, persons, papers and effects, against unreasonable searches and seizures, shall not be violated. No warrant shall issue except upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, or the person or thing to be seized.

8

evidence; flee; or endanger the safety of others or of property. The circuit court found that the DMV had failed to show any of the three categories of exigent circumstances and that Deputy Warner did not testify to any exigent circumstances. To the contrary, the deputy testified that if Briscoe had not answered his door, then the deputy would have waited for the approval of an arrest warrant, and then only for domestic battery and not DUI. The deputy did not begin collecting evidence to arrest Briscoe for DUI until after he had been arrested for domestic battery and transported to the courthouse for processing.

Accordingly, the circuit court concluded that the warrantless arrest of Briscoe was done without probable cause and exigency, and thus, that the DMV had failed to establish Briscoe had been "lawfully placed under arrest" for any offense. The circuit court reversed the OAH's decision and reinstated Briscoe's license.

Several weeks later, on December 2, 2021, the circuit court entered an order dismissing the DMV's June 2021 third suspension of Briscoe's license and listed a host of reasons. In general, the circuit court found the latter suspension improper because the first two suspensions had been declared invalid, and the evidence the DMV relied upon for the third suspension stemmed directly from Briscoe's unlawful arrest.[8] Accordingly, the circuit

---

[8] The circuit court also found that there was insufficient evidence to support the suspension because there was absolutely no proof Briscoe "drove on May 20, 2021" as stated in the DMV's third suspension order; Briscoe never testified to driving on that day or any other specific day, or to driving in West Virginia. Additionally, the DMV claimed it had a right to automatically revoke Briscoe's driver's license based on any one of seven diverse offenses listed in West Virginia Code § 17B-3-5 (1986) (ranging from negligent homicide during the operation of a motor vehicle to failure to stop and render aid after an

Continued . . .

9

court found the DMV's June 2021 suspension "was in clear error and not based on sufficient evidence."

The DMV now pursues two consolidated appeals, the first of the circuit court's November 8, 2021, order that reversed the OAH's decision (No. 21-0991); and the second of the circuit court's December 2, 2021, order that reversed the DMV's third revocation order (No. 21-0990).

## II. Discussion

We begin our discussion of the issues in this case with a significant caveat: the statutes governing OAH decisions which the DMV asks us to interpret or apply in this appeal have been repealed by the Legislature. First, in 2020, the Legislature stripped the OAH of jurisdiction of any case arising after July 1, 2020, and it abolished the OAH effective on July 1, 2021. *See* W. Va. Code § 17C-5C-1a (2020). Second, effective on May 4, 2023, the Legislature eliminated all of the statutory guidelines used by the OAH to issue decisions. *See* H.B. 2564 ("relating to repeal of administrative hearing procedures for DUI offenses").[9] Nevertheless, despite the abolition of this government agency and its various procedural statutes, we must still rely on those statutes to resolve the questions presented by the DMV's appeal.

---

accident to being convicted of reckless driving three times in two years). The circuit court noted that it could "only guess" which of these seven offenses the DMV was relying upon.

[9] House Bill 2564 repealed West Virginia Code §§ 17C-5A-2 and 17C-5C-1, -1a, -2, -3-, -4, -4a, -4b, and -5.

10

Although this Court is reviewing a circuit court's decision, at its core we are reviewing a decision by an administrative agency. Hence, we apply the standards of review contained in W. Va. Code § 29A-5-4(g) (2021) of the Administrative Procedures Act. Syl. Pt. 1, *Frazier v. Null*, 246 W. Va. 450, 874 S.E.2d 252 (2022). West Virginia Code § 29A-5-4(g) requires a court to reverse, vacate, or modify an administrative agency's order or decision if a petitioner's substantial rights have been prejudiced because the agency's findings, inferences, conclusions, decision, or order (1) violates constitutional or statutory provisions; (2) exceeds the agency's statutory authority or jurisdiction; (3) was made upon unlawful procedures; (4) is affected by other error of law; (5) is clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or (6) is arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. *See also* Syl. Pt. 2, *Shepherdstown Volunteer Fire Dep't v. State ex rel. State of W. Va. Hum. Rts. Comm'n*, 172 W. Va. 627, 309 S.E.2d 342 (1983).

Under the now-repealed West Virginia Code § 17C-5A-2(f), the DMV was required to prove, and the OAH was required to find, that Briscoe was "lawfully placed under arrest" or was "lawfully taken into custody." The DMV's primary argument challenges the circuit court's conclusion that the deputy's warrantless arrest of Briscoe in his home was not "lawful." We note, however, the novelty of the facts of this case. In the typical driving-while-intoxicated case, the impaired person is found by a law enforcement

11

officer actively driving and behind the wheel of a moving vehicle,[10] or behind the wheel of

a parked vehicle,[11] or near a vehicle situated in a manner such that it could only have gotten

there from the impaired person driving it.[12] "Most of our case law dealing with driving

under the influence does not involve arresting someone in their home." *State v. Cheek*, 199

W. Va. 21, 25, 483 S.E.2d 21, 25 (1996).

That said, as we noted earlier, both the United States and West Virginia

Constitutions proscribe warrantless arrests in one's home. Stated simply, warrantless

arrests in a home are presumptively unreasonable:

> It is axiomatic that the "physical entry of the home is
> the chief evil against which the wording of the Fourth
> Amendment is directed." *United States v. United States*

---

[10] *See, e.g.*, *Crouch v. W. Va. Div. of Motor Vehicles*, 219 W. Va. 70, 631 S.E.2d 628 (2006) (officer stopped intoxicated driver after seeing her weaving four to five times and drop off the side of the road into a ditch); *Simon v. W. Va. Dep't of Motor Vehicles*, 181 W. Va. 267, 382 S.E.2d 320 (1989) (officer stopped intoxicated driver after seeing him drive off road two or three times).

[11] *See, e.g.*, Syl. Pt. 3, *Carte v. Cline*, 200 W. Va. 162, 488 S.E.2d 437 (1997) (driver slumped behind steering wheel on a state road at a stop light with engine running; Court ruled that driver can be charged with DUI "so long as all the surrounding circumstances indicate the vehicle could not otherwise be located where it is unless it was driven there by that person.").

[12] *See, e.g.*, *Cain v. W. Va. Div. of Motor Vehicles*, 225 W. Va. 467, 694 S.E.2d 309 (2010) (intoxicated driver found asleep on the ground in front of his vehicle; vehicle was parked in a pull-off area that officer had seen empty thirty minutes earlier, the engine was turned off, and the keys were not in the ignition; and upon waking, driver said he was "just trying to get home"); *Carroll v. Stump*, 217 W. Va. 748, 750, 619 S.E.2d 261, 263 (2005) (intoxicated driver admitted to driving one of the vehicles in two-vehicle accident); *State v. Davisson*, 209 W. Va. 303, 547 S.E.2d 241 (2001) (after single vehicle accident, witnesses saw and identified the intoxicated driver as he abandoned the vehicle; driver was also owner of vehicle; and driver was found shortly thereafter and arrested in his driveway).

12

> *District Court*, 407 U.S. 297, 313, 92 S.Ct. 2125, 2134, 32 L.Ed.2d 752 (1972). And a principal protection against unnecessary intrusions into private dwellings is the warrant requirement imposed by the Fourth Amendment on agents of the government who seek to enter the home for purposes of search or arrest. See *Johnson v. United States*, 333 U.S. 10, 13-14, 68 S.Ct. 367, 368-369, 92 L.Ed. 436 (1948). It is not surprising, therefore, that the Court has recognized, as "a 'basic principle of Fourth Amendment law[,]' that searches and *seizures inside a home without a warrant are presumptively unreasonable." Payton v. New York*, 445 U.S. [573], 586, 100 S.Ct. [1371], 1380 [(1980)].

*Welsh v. Wisconsin*, 466 U.S. 740, 748-49 (1984) (emphasis added). Like the Fourth Amendment to the United States Constitution, "Article III, § 6 of our state constitution . . . protect[s] citizens from unreasonable searches and seizures." *State v. Stone*, 165 W. Va. 266, 269, 268 S.E.2d 50, 53 (1980), overruled on other grounds by *State v. Julius*, 185 W. Va. 422, 408 S.E.2d 1 (1991). As we once said, "we jealously guard a person's right to privacy in the home and have strictly limited the circumstances justifying a warrantless arrest in the home." *State v. Mullins*, 177 W. Va. at 533-34, 355 S.E.2d at 26. Hence, "searches and seizures performed without a valid warrant are presumed to be unreasonable, and will be lawful only if the search and seizure falls within a recognized exception to the warrant requirement." *Ullom v. Miller*, 227 W. Va. 1, 8, 705 S.E.2d 111, 118 (2010).

Under the federal and state constitutions, a warrantless arrest in one's home is presumptively unreasonable unless a law enforcement officer can show two things: probable cause to believe that a crime has been committed; and exigent circumstances sufficient to sidestep the requirement of procuring a warrant from an impartial magistrate. The constitutions make clear that "[a] warrantless arrest in the home must be justified not

13

only by *probable cause*, but by *exigent circumstances* which make an immediate arrest imperative." Syl. pt. 2, *State v. Mullins*, 177 W. Va. at 532, 355 S.E.2d at 25 (emphasis added).

As we noted earlier, the circuit court found that the DMV, first, failed to establish that the deputy had probable cause; and second, failed to articulate exigent circumstances that made an immediate, warrantless arrest imperative. The DMV vigorously asserts that the circuit court erred in determining there was no probable cause, and it argues at length that the deputy had more than a reasonable suspicion to believe that Briscoe had driven under the influence from his paramour's residence to his home.[13] We,

---

[13] A question that we leave to another day is the modern-day meaning of "probable cause" in the context of an allegation of domestic violence. Generally speaking, "[p]robable cause to make an arrest without a warrant exists when the facts and the circumstances within the knowledge of the arresting officers are sufficient to warrant a prudent man in believing that an offense has been committed or is being committed." Syl. Pt. 1, *State v. Plantz*, 155 W. Va. 24, 24, 180 S.E.2d 614, 616 (1971). Accord, Syl. Pt. 4, *Reed v. Hill*, 235 W. Va. 1, 770 S.E.2d 501 (2015). However, misdemeanor offenses typically trigger another problem: a law enforcement officer "has no authority, at common law or by statute, to make a warrantless arrest for a misdemeanor of a person who does not commit such an offense in his presence." Syl. Pt. 3, *State v. Thomas*, 157 W. Va. 640, 203 S.E.2d 445 (1974). "An offense can be said to be committed in the presence of an officer only when he sees it with his own eyes, or sees one or more of a series of acts constituting the offense, and is aided by his other senses or by information as to the others, when it may be said the offense was committed in his presence." Syl. Pt. 9, *State v. Lutz*, 85 W. Va. 330, 101 S.E. 434 (1919).

Nevertheless, when a law enforcement officer is investigating allegations of misdemeanor domestic abuse or battery by a person in violation of West Virginia Code § 61-2-28, the officer "has authority to arrest that person without first obtaining a warrant" if the officer "has observed credible corroborative evidence that an offense has occurred" and either "an oral or written allegation" of an offense or the officer sees "credible evidence that the accused committed the offense." W. Va. Code § 48-27-1002(a) (2010). While the

Continued . . .

14

however, decline to consider the DMV's assertions regarding probable cause because the case may be resolved on the other factor: the lack of exigent circumstances.

Law enforcement officers making a warrantless arrest in a home must be able to articulate exigency. As the United States Supreme Court once said,

> the Constitution requires a magistrate to pass on the desires of the police before they violate the privacy of the home. We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative.

*McDonald v. United States*, 335 U.S. 451, 456 (1948). This Court has identified three broad categories of exigent circumstances that may support a warrantless arrest:

---

parties have cited this Code section, they have not explained its interaction with constitutional probable cause requirements for a warrantless arrest in a home, and we decline to do so on the record of this case. Further, the DMV fails to explain how this statute displaces the constitutional requirement for exigent circumstances that would support a warrantless arrest in one's home (circumstances such as a likelihood of harm to the wellbeing of others). *See generally*, *Brigham City v. Stuart*, 122 P.3d 506, 516 (Utah 2005) (*rev'd and remanded sub nom Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006)) ("[T]he Fourth Amendment protections afforded a dwelling and the unquestioned evils of domestic violence are powerful forces pulling a police officer standing on the threshold of a home in opposite directions: the Fourth Amendment pushing him toward a magistrate and a warrant, domestic violence drawing him through the door to intervene in one of the most common and volatile settings for serious injury or death. We are wary of making sweeping pronouncements in the face of these important, but contradictory, concerns."); Deborah Tuerkheimer, *Exigency*, 49 Ariz. L. Rev. 801 (2007); Toni L. Harvey, *Batterers Beware: West Virginia Responds to Domestic Violence with the Probable Cause Warrantless Arrest Statute*, 97 W. Va. L. Rev. 181, 185 (1994) (discussing how all states have "enacted some form of probable cause warrantless arrest statute, enabling law-enforcement officers to respond more effectively to incidents of domestic violence[.]"). *See also*, *United States v. Davis*, 290 F.3d 1239, 1244 (10th Cir. 2002) (declining to "grant[] unfettered permission to officers to enter homes, based only upon a general assumption domestic calls are *always* dangerous"); *People v. Chavez*, 240 P.3d 448, 451 (Colo. App. 2010) ("there is no 'domestic violence' exception to the Fourth Amendment").

The test of exigent circumstances for the making of an arrest . . . without a warrant in West Virginia is whether, under the totality of the circumstances, the police had reasonable grounds to believe that if an immediate arrest were not made, the accused would be able to destroy evidence, flee or otherwise avoid capture, or might, during the time necessary to procure a warrant, endanger the safety or property of others. This is an objective test based on what a reasonable, well-trained police officer would believe.

Syllabus Point 2 of *State v. Canby*, W.Va., 252 S.E.2d 164 (1979).[14]  The United States Supreme Court recently summarized the case law and offered the same categories of exigency:

---

[14] Although preventing the escape of a suspect is a recognized exigent circumstance, in a footnote this Court has also included the parallel doctrine of hot pursuit as an additional category supporting a warrantless arrest in a home. *See State v. Lacy*, 196 W. Va. 104, 112 n.7, 468 S.E.2d 719, 727 n.7 (1996) ("Recognized situations in which exigent circumstances exist include: danger of flight or escape; danger of harm to police officers or the general public; risk of loss, destruction, removal, or concealment of evidence; and hot pursuit of a fleeing suspect."). *See also* Dale Joseph Gilsinger, *When Is Warrantless Entry of House or Other Building Justified Under "Hot Pursuit" Doctrine*, 17 A.L.R.6th 327 (2006) ("Courts commonly reconcile the hot pursuit doctrine with the Fourth Amendment by reasoning that an exception to the Fourth Amendment warrant requirement pertains when exigent circumstances exist that make it impracticable to obtain a warrant, and characterizing hot pursuit as a specimen of such exigent circumstances.").

We note that, during oral argument, counsel for the DMV proffered a "hot pursuit" opinion by the United States Supreme Court (*United States v. Santana*, 427 U.S. 38 (1976)) for the amazing proposition that individuals who have opened their home's door in answer to an officer's knock, and who are therefore standing at their home's threshold, are not protected by the Fourth Amendment. *Santana* stands for no such principle, but rather says that if an individual is seen committing a crime from their front door and at the threshold of their home, the officer may chase the individual into the home under the doctrine of hot pursuit. *See id.* at 43 (1976) (Santana sold heroin in the doorway of her house and ran inside when officers shouted "police" and gave chase. "This case[] involve[es] a true 'hot pursuit' . . . The fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into Santana's house.  Once Santana saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence.")

16

> The Fourth Amendment ordinarily requires that a law enforcement officer obtain a judicial warrant before entering a home without permission. But an officer may make a warrantless entry when the exigencies of the situation, considered in a case-specific way, create a compelling need for official action and no time to secure a warrant. The Court has found that such exigencies may exist when an officer must act to prevent imminent injury, the destruction of evidence, or a suspect's escape.

*Lange v. California*, 594 U.S. \_\_\_, \_\_\_, 141 S. Ct. 2011, 2013 (2021) (cleaned up).

The DMV does not point to any exigent circumstance to justify the failure of the deputy to obtain a warrant. To the contrary, the DMV's entire argument on exigency is found in one sentence of its opening brief: "exigent circumstances were not required because [Briscoe] willingly answered the door and voluntarily" spoke with Deputy Warner "without telling the officer to leave and return with a warrant." We reject this argument because it is squarely contradicted by our decision in *State v. Cheek* where this Court addressed a similar situation. In *Cheek*, witnesses told police they saw the defendant driving erratically and then enter his home. A police officer knocked on the door. When the defendant opened the door, the officer "saw an object" in the defendant's hand and forcibly pulled him out of his house before arresting him for DUI. 199 W. Va. at 23, 483 S.E.2d at 23. We noted the constitutional rule that "when the government intrudes into a person's home, a warrantless arrest must be justified by *probable cause* and *the presence of exigent circumstances*." *Id*. at 26, 483 S.E.2d at 26. This Court set aside the arrest because "no exigent circumstance was shown;" the defendant "was in his home, he was not liable to flee, destroy evidence or endanger the safety or property of others; especially

17

with the two officers outside." *Id.* at 26-27, 483 S.E.2d at 26-27. *See also*, *Welsh v. Wisconsin*, 466 U.S. at 750 (1984) (finding that a warrantless arrest in a home for driving under the influence was unreasonable: "When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate.").

In the instant case, Deputy Warner recognized a lack of exigency when he testified that, if Briscoe had not answered his door, then the deputy would have left Briscoe in his home and procured an arrest warrant from an impartial magistrate for domestic battery. Moreover, Briscoe was in his home and many miles away from his alleged domestic violence victim, and the DMV points to nothing to suggest Briscoe was a threat to the well-being of officers or others. Numerous officers were present at Briscoe's home (as Deputy Warner testified, "the whole county" was looking for Briscoe that Thanksgiving morning), and the DMV offers nothing to indicate Briscoe might have fled or otherwise eluded capture during the time necessary to procure a warrant. And lastly, the DMV failed to identify any evidence that might have been destroyed by Briscoe during the delay in obtaining a warrant. To the extent there is a suggestion that the mere metabolism of alcohol in Briscoe's bloodstream would constitute the elimination of evidence, the United States Supreme Court has determined that the natural metabolization of alcohol does not create a per se exigency that justifies violating the Fourth Amendment's warrant requirement. *Missouri v. McNeely*, 569 U.S. 141 (2013).

18

Under the now-repealed West Virginia Code § 17C-5A-2(f)(2), the DMV was required to establish to the OAH that Briscoe "was lawfully placed under arrest" or was "lawfully taken into custody."  When we weigh the Legislature's use of a word like "lawfully," we note that "[i]n the absence of any definition of the intended meaning of words or terms used in a legislative enactment, they will, in the interpretation of the act, be given their common, ordinary and accepted meaning in the connection in which they are used."  Syl. Pt. 1, *Miners in Gen. Grp. v. Hix*, 123 W. Va. 637, 17 S.E.2d 810 (1941).  The definition of a "lawful" act is one that is "[n]ot contrary to law; permitted or recognized by law; rightful[.]"  *Black's Law Dictionary* (11th ed. 2019).  Accord, *In re Adoption of B.C.H.*, 22 N.E.3d 580, 585 (Ind. 2014) ("Put simply, 'lawful' means 'not contrary to law.'"); *Hougum v. Valley Mem'l Homes*, 574 N.W.2d 812, 821 (N.D. 1998) ("As commonly used, the word 'lawful' means authorized by law and not contrary to, nor forbidden by law."); *Dominick v. Christensen*, 548 P.2d 541, 542 (Wash. 1976) ("[T]he term, given its ordinary interpretation, means 'allowed or permitted by law.'").  The *Oxford English Dictionary* offers a number of synonyms for "lawful" that include "permissible," "proper," "authorized," "warranted," "going by the rules," and – significantly for our discussion – "constitutional."

A "lawful" arrest would, therefore, be one that complies with the dictates of the United States and West Virginia Constitutions.  Under the jurisprudence of this Court and the United States Supreme Court, and viewing the evidence objectively and as a whole, we see nothing that impelled the deputies to arrest Briscoe without first obtaining a warrant.

Briscoe's warrantless arrest in his home in the absence of exigent circumstances was presumptively unreasonable, contrary to decades of constitution-based case law, and therefore was not lawful. The OAH was clearly wrong in its conclusion that the DMV's suspensions were valid, because Briscoe clearly was not "lawfully placed under arrest" or "lawfully taken into custody" as required by West Virginia Code § 17C-5A-2(f)(2). Because the arrest violated constitutional provisions, and the subsequent suspensions violated statutory provisions, the circuit court did not err in reversing the OAH and setting aside the DMV's first two suspension decisions.

We now turn to the DMV's other contention on appeal: that the circuit court erred when it reversed the DMV's third suspension of Briscoe's license in June 2021. The DMV acknowledges the circuit court's (and now this Court's) ruling that the first and second suspensions were found unlawful. Still, it contends that for a period of several weeks (between April 23 and the circuit court's issuance of a stay on May 20, 2021) the suspensions were unquestionably still in effect. Accordingly, the DMV argues that Briscoe's license could still be suspended if he drove during that period because such suspensions are mandatory.[15]

---

[15] The DMV cites to several now-repealed OAH procedural statutes in support of a lengthy and complicated theory that the circuit court was only empowered by the procedural guidelines to stay the OAH decision on a prospective basis, but it erred by making the stay retroactive to the date the decision was entered. Similarly, the DMV cites the same now-repealed statutes to assert it was entitled to a hearing at which it would have offered evidence in support of its claim that Briscoe drove during the weeks his license was suspended. We decline to consider these arguments.

We reject this position because the governing statutes show the DMV's argument is wholly without merit. West Virginia Code § 17B-4-3(c) (2017) provides (with emphasis added) that a person may not drive a vehicle if "the license of that person was *lawfully* suspended or revoked" for offenses like DUI.[16] Upon proof the person drove while his license was "lawfully suspended or revoked," the DMV must suspend, restrict, or revoke the person's license for an additional six months. W. Va. Code § 17B-3-6(a)(1).[17]

---

[16] West Virginia Code § 17B-4-3(c) provides, in part, and with emphasis added, that:

> Upon receiving a record of the first or subsequent conviction of any person . . . upon a charge of driving a vehicle while the license of that person was *lawfully suspended or revoked*, the [DMV] shall extend the period of the suspension or revocation for an additional period of six months which may be served concurrently with any other suspension or revocation.

[17] West Virginia Code § 17B-3-6(a)(1) (2009) provides, with emphasis added, that the DMV is "authorized to suspend, restrict, or revoke the driver's license of any person without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee . . . [h]as committed an offense [under West Virginia Code § 17B-4-3] for which mandatory revocation of a driver's license is required *upon conviction*[.]" In Syllabus Point 2 of *In re Petition of McKinney*, 218 W. Va. 557, 625 S.E.2d 319 (2005), we interpreted this Code section to require revocation of a driver's license regardless of whether the driver is actually convicted of violating West Virginia Code § 17B-4-3:

> Pursuant to W.Va. Code § 17B-3-6(a)(1) (1997), the West Virginia Division of Motor Vehicles is authorized to suspend the driver's license of any person without preliminary hearing upon a showing by its records or other sufficient evidence that the licensee committed an offense for which mandatory revocation of a driver's license is required upon conviction, regardless of whether the licensee is convicted of the offense.

West Virginia Code § 17B-3-6 was amended in 2022 but no change affects our opinion.

21

However, as we found earlier in this opinion, Briscoe's license was not "lawfully suspended or revoked" by the DMV in its December 2019 orders. Hence, his license could not have been subsequently suspended, restricted, or revoked in June 2021 by the DMV under W. Va. Code §§ 17B-3-6(a)(1) and 17B-4-3(c). Accordingly, we find no error in the circuit court's order reversing the DMV's third suspension order.

## IV. Conclusion

The circuit court was, and this Court is, required to reverse the DMV's and OAH's administrative decisions if the record shows Briscoe's substantial rights were prejudiced because the decisions violated constitutional or statutory provisions, were based upon unlawful procedures, or were affected by an error of law. We find no error in the circuit court's assessment that all the DMV's suspension orders were founded upon an unlawful arrest. Accordingly, the circuit court's November 8, 2021, and December 2, 2021, orders that reversed the OAH's decisions must be affirmed.

Affirmed.

22